Filed 1/14/14  P. v. Valdez CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND JAMES VALDEZ,<br><br>    Defendant and Appellant. | B245646<br><br>(Los Angeles County<br>Super. Ct. No. KA098847) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Gina M. McCoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Shawn McGahey Webb, Deputy Attorneys General, for Plaintiff and Respondent.

Raymond James Valdez ("defendant") appeals from a jury verdict finding him guilty of possession of a controlled substance in violation of Health & Safety Code section 11377, subdivision (a) and resisting, delaying or obstructing an officer in violation of Penal Code[1] section 148, subdivision (a)(1), and from the jury's finding that the special allegations contained in the information were true.[2] Defendant was sentenced to a total of nine years in state prison, consisting of the upper term of three years for the Health and Safety Code violation, doubled to six years pursuant to the Three Strikes law, plus three one-year enhancement terms pursuant to section 667.5, subdivision (b). The court sentenced defendant to a concurrent one year term in the county jail for the resisting arrest conviction. Defendant was also assessed various fines as required by law. Defendant was granted 262 days of presentence custody credit, consisting of 131 days actually served and 131 of good conduct credit.

Defendant contends the trial court erred in proceeding with trial in his absence, and further contends there is insufficient evidence to support his conviction for violating section 148, subdivision (a)(1).

## STATEMENT OF FACTS

On July 27, 2012, at 11:21 a.m., Baldwin Park Police Officer Eduardo Cervantes was dispatched to an apartment complex at 3010 Vineland Avenue in response to a citizen complaint regarding a person sleeping in the stairwell of the apartment complex. Officer Cervantes, who was working as a "single-man unit," drove to the apartment complex and was met there by Sergeant Harvey, who was the field sergeant that day. Officer Cervantes investigated this complaint because this person sleeping in the stairwell

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] The jury found true the allegations that appellant had suffered a prior conviction within the meaning of sections 667, subdivisions (b) through (i) and 1170.12 (the "Three Strikes" law) and had served three prior prison terms within the meaning of section 667.5.

could be trespassing, or his presence could result in an access problem and/or a fire hazard. He also might be ill, and in need of assistance. He would have to wake the person to check identification and the nature of his business, if any, at the apartment complex.

The officers discovered defendant, sleeping in the far south building stairway. Officer Cervantes noticed that defendant's torso and arms were twitching. Defendant was slouched over and appeared to be sleeping. Officer Cervantes could not see defendant's hands. Defendant was wearing a "very baggie hoodie" which also prevented Officer Cervantes from seeing his head. When defendant did not react to Officer Cervantes' command to defendant to wake up, Officer Cervantes removed the hood from defendant's head. After Officer Cervantes directed a second command to defendant to wake up, defendant awakened.

Defendant immediately became argumentative and confrontational. He attempted to stand up. Despite Officer Cervantes' multiple commands to remain seated, defendant stood up. Officer Cervantes was concerned for his safety because defendant was wearing a baggie hoodie and baggie pants, which prevented him from being able to observe whether defendant was armed. Defendant continued to be belligerent toward the officers and at one point he turned around and took a step towards the stairs in what appeared to be an attempt to escape from the officers. Defendant's lack of cooperation hindered the officers' ability to investigate a possible criminal trespass. Officer Cervantes and Sergeant Harvey then took defendant down to the ground and handcuffed him.

After defendant was placed under arrest for a violation of section 148, subdivision (a)(1), he was searched. Officer Cervantes found a plastic baggie containing a crystalline substance in the front right coin pocket of his jeans. Both parties at trial stipulated that this substance had been analyzed by Robert Takeshita, a Los Angeles Sheriff's Department Criminalist, who determined the crystalline substance contained in the plastic bag consisted of .21 grams of powder containing methamphetamine.

Defendant appeared to Officer Cervantes to be under the influence of a stimulant at the time of his arrest; he had uncontrollable body tremors, dilated pupils, and dry, chapped lips i.e. "cotton mouth."

Defendant admitted on the witness stand during trial that he was previously convicted of possession of a weapon, assault with a firearm, and resisting an executive officer. He also admitted that he was under the influence of methamphetamine at the time of the present confrontation with the officers.

## ISSUES ON APPEAL

### 1. Defendant's Absence From Part Of The Trial.

On the first day of testimony in his trial, defendant became extremely agitated while he was in the court lockup, and smashed his fist through a safety glass window, necessitating a trip to the hospital. The court found that defendant had voluntarily disabled himself and voluntarily absented himself due to his violence. The court proceeded with the trial in defendant's absence. During this time Officer Cervantes testified for the prosecution and defendant's niece Jessica Pedroza testified for the defense. Defendant returned to court in the afternoon and testified on his own behalf.

Defendant contends the trial court violated his federal and state law rights by its finding that he had impliedly waived his right to be present since the trial court did not "warn him of the consequences of any disruptive behavior" , and because his absence "was not voluntary." This, he argues, prevented him from assisting "his counsel with eliciting testimony from Officer Cervantes and his niece, Jessica Pedroza, consistent with his theory of the case."

A criminal defendant's right to be present at all critical stages of his trial is guaranteed under the "confrontation clause of the Sixth Amendment to the United States Constitution, as applied to the states through the due process clause of the Fourteenth Amendment and Section 15 of Article 1 of the California Constitution and sections 977 and 1043 of the Penal Code. Presentation of evidence to the jury in such a critical stage. (§ 977, subd. (b)(1); *People v. Concepcion* (2008) 45 Cal.4th 77, 82; *People v. Jackson*

4

(1996) 13 Cal.4th 1164, 1209; § 1043.) Appellate courts have consistently held, however that a criminal defendant's right to be personally present at trial is not absolute. (*Illinois v. Allen* (1970) 397 U.S. 337, 342-343; *People v. Howze* (2001) 85 Cal.App.4th 1380, 1393.) It can be waived when, despite warnings, a defendant persists in unruly, contumacious behavior. *(Illinois v. Allen, supra,* at p. 346; *People v. Hayes* (1991) 229 Cal.App.3d 1226, 1233.)

To determine whether a criminal defendant's absence is voluntary, a trial court must consider the totality of the facts. (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1205.) The voluntariness of the defendant's absence does not depend on explicit oral or written consent; rather it may be inferred from a defendant's actions. (*Id*. at p. 1206; *People v. Price* (1991) 1 Cal.4th 324, 406.) In concluding that a defendant has voluntarily absented himself, a judge "may rely on reliable information, such as statements from jail or court personnel. . . ." (*People* v. *Gutierrez, supra,* 29 Cal.4th at p. 1205.) Otherwise, dragging an "unwilling and uncooperative defendant" into court could pose a risk of injury to the defendant and his handlers, or result in prejudice if the defendant disrupts the proceedings in front of the jury. (*Id*. at p. 1208.)

"An appellate court applies the independent or de novo standard of review to a trial court's exclusion of a criminal defendant from trial, either in whole or in part, insofar as the trial court's decision entails a measurement of the facts against the law." (*People v. Waidla* (2000) 22 Cal.4th 690, 741.)

Here, the facts available to the trial court at the time it decided to continue with the trial without the defendant being present showed a history of disruptive behavior. Defendant had been previously convicted of obstructing or resisting an executive officer in violation of section 69.

On September 25, 2012, defendant became so disruptive at a pre-trial *Marsden*[3] hearing in this case that he was excluded from the courtroom and the court concluded the hearing without him present. In doing so the trial court stated: "Mr. Valdez has

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

5

voluntarily absented himself from today's proceedings. He became extremely disruptive and refused to remain silent[.] In order for the court to finalize its rulings after numerous attempts on my part to remind him that further disruption would result in his removal from the courtroom. He ignored those admonitions so the court removed Mr. Valdez. If necessary, the court will proceed to trial without Mr. Valdez if he continues that disruptive behavior. But, nonetheless, he'll have time to think about his right to be present during his trial and will be given another opportunity to be present if he chooses to behave."

During jury selection, defendant continued his improper conduct. He talked to himself, commenting on what was going on in the courtroom, and attempting to talk to a deputy who was 12 to 14 feet away from him, using language "liberally peppered with obscenities and vile insults."[4]

On the first day of testimony at trial, jail staff informed the court of defendant's poor behavior while in lockup. Sergeant McKellar, the Supervisor of the Pomona North jail, told the court, "I was called over by the Bonus here, Bonus Rodarte, due to an agitated and argumentative inmate. She had briefed me prior to that time that he was here yesterday and they had some problems. She requested that I come over here. So I came. [¶] When I went into the lockup, the gentleman was extremely agitated. He was yelling. And at one point he took his fist and with a sideway motion hit the interview room window, which is safety glass, and pretty much shattered the entire pain of window. [¶] We were trying to move him from the third floor to the fifth floor to make it easier to get him out here for you trial, and during that point he said, 'If you're going to take me out of here, you're going to have to drag me out. I'm not going to go anywhere. . . .'" In addition to punching the safety glass window, defendant kicked open a locked door.

---

[4] Before jury selection, defendant insisted that he would only wear civilian clothes provided by his family. His family did not want to buy clothes for defendant because they were not sure that he would wear them. Defendant refused to wear the clothes provided by his lawyer.

Sergeant McKellar added that defendant was "somewhat calm during the time that his attorney was down in the interview room. His emotions were pretty emotional, they run rollercoaster. He was okay. He got loud. Then he got extremely loud. He would calm down. [¶] At this time we have, because of the injured hand, we have a county ambulance coming so we can do a medical run and take him downtown." The Court asked Sergeant McKellar, "So, in essence, he has rendered himself unavailable for this morning due to his medical condition and his violent behavior?" The sergeant agreed "absolutely."

After hearing argument from defense counsel and the prosecutor, the court ruled: "I would only observe that yesterday afternoon, despite [defense counsel's] admonitions to not speak out loud, [defendant] was carrying on a running conversation with himself, commenting on what was happening in court, commenting to the deputy who was sitting as the desk about 12 to 14 feet away. Apparently talking about his housing . . . despite admonitions by the two-stripe deputy to pipe down. It was just a running commentary that was going on. [¶] Coupled with today, we have a situation where basically the court has a right to remove a defendant who persists in unruly, contentious behavior, *People v. Hayes* [(1991)] 229 Cal.App.3d 1226. And a disruptive defendant waives his right to be present at trial, *People v. Welch* [(1999)] 20 Cal.4th 701. And a trial court need not wait for actual violence in the courtroom to find a disruption. . . . [¶] I'm going to find he's voluntarily disabled himself and voluntarily absented himself due to his violence."

After independently reviewing the record, we find no error in the trial court's proceeding with trial in defendant's absence. Defendant had began engaging in disruptive conduct more than a month before trial started, at his *Marsden* hearing. The disruptive conduct continued when trial started. Defendant was disruptive during jury selection. On the morning that trial testimony was scheduled to begin, he told the jail staff in lockup, "if you're going to take me out of here, you're going to have to drag me out." This statement alone is arguably sufficient to constitute a voluntary waiver of his right to be present at trial. (See *People v. Gutierrez, supra*, 29 Cal.4th at p. 1206 [defendant waived his right to be present at trial by his affirmative refusal to exit his

7

cell].) Appellant then punched his fist through safety glass and kicked a locked door, acts of violence which could only cause injury to himself. These acts together with the preceding statements, create a reasonable inference that defendant voluntarily disabled himself to disrupt the proceedings. (See *People v. Rogers* (1957) 150 Cal.App.2d 403, 413 [self-induced medical condition for the purpose of disrupting the proceedings is a waiver of the right to be present].)

In addition, defendant's violent conduct, as set forth above, constituted additional grounds for defendant being excluded from the courtroom. A trial court need not wait for violence to occur in the four walls of the courtroom in order to find a disruption within the meaning of section 1043. (See *People v. Gutierrez, supra,* 29 Cal.4th at p. 1208; *People v. Price, supra,* 1 Cal.4th at p. 406.)

Defendant contends, however, that despite his conduct described herein, the trial court was required to delay the trial until his return to the courthouse from the hospital, and then warn him that any further violent or disruptive actions would result in his removal from the courtroom. This assertion lacks merit. Not only could his actions be reasonably interpreted by the trial court as reflecting a desire on his part not to attend trial, but defendant had experienced, first hand, the consequences of disruptive behavior when he was removed from the arraignment court. Since he was warned by the arraignment judge that further disruptive conduct on his part would result in his absence from his trial, there is no requirement that the trial court renew its warnings. (See *People v. Medina* (1995) 11 Cal 4th 694, 738-739.) [5]

Assuming arguendo that defendant's exclusion from the courtroom without further notice was error, the defendant has failed to demonstrate that he was prejudiced as a result of missing the morning session of his one day trial. (See *People v. Perry* (2006) 38

---

[5] Even after defendant returned from the hospital he was exhibiting a violent nature. While in the lock-up prior to the afternoon session when he was scheduled to testify it was reported by a deputy sheriff as follows: "Your honor, when I went down to the fourth floor to take a body to Department N, the guy in the tank, which is your defendant, was in lock up shouting and screaming, fuck the police, come and get me, and just ranting and raving . . . ."

8

Cal.4th 302, 312 [defendant must prove prejudice from erroneous exclusion from trial].) Prior to opening statements the trial court admonished the jury not to consider defendant's absence "for any purpose" and not to "let that enter [their] deliberations in any way."

Defendant contends that his exclusion prevented him from assisting his counsel in the examination of Officer Cervantes and defense witness Pedroza. He has not proved that his assistance would have impacted the course of the trial and made it likely that he would have received a more favorable verdict. Further, defendant testified in the afternoon session and his testimony alone provided sufficient evidence to prove his guilt to the charges brought against him beyond a reasonable doubt. Defendant admitted that a "little bag" containing methamphetamine was found in his pocket, and that he was familiar with drugs and had gotten "high" the night before his arrest. He also admitted he was still under the influence of the methamphetamine at the time of his arrest. His story of his travels of the prior evening and how he knew the police officers who arrested him "planted" the evidence on him, was inherently incredible. Defendant also admitted he ignored Officer Cervantes' command to raise his hands in the air, and further admitted that he chose to walk away from the officer while the officer was performing his duty in attempting to investigate the incident. Thus, contrary to defendant's claim, any error whether judged under the standard of *People v. Watson* (1956) 46 Cal.2d 818 or *Chapman v. California* (1967) 386 U.S. 18, was harmless.

## 2. Sufficiency Of The Evidence To Support Defendant's Conviction For Violating Penal Code section 148, subdivision (a)(1)

Defendant contends that no substantial evidence was presented upon which a reasonable juror could have found him guilty of resisting, obstructing, or delaying Officer Cervantes in violation of section 148, and therefore the conviction must be reversed. He argues specifically that Officer Cervantes did not have a "sufficient reason" to arrest him based on his "argumentative and confrontational" behavior and that his refusal to obey

the officer's commands did not rise to the level of conduct punishable by section 148, subdivision (a). Defendant further contends that such a conviction violates his stated and federal constitutional rights to due process.

Section 148, subdivision (a) (1) provides in relevant part: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . ." is guilty of a misdemeanor.

In reviewing a challenge to the sufficiency of the evidence, an appellate court "review[s] the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence [i.e.,] evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jones* (2013) 57 Cal.4th 899, 960; *People v. Castaneda* (2011) 51 Cal.4th 1292, 1322.) Reversal is not warranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998)18 Cal. 4th 297, 331.) The testimony of a single witness, unless physically impossible or inherently improbable, is sufficient to support a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Defendant contends Officer Cervantes arrested him for being "argumentative and confrontational," and this was an "insufficient reason" to arrest him. He contends individuals have a right to oppose a police officer's actions, particularly where they believe the actions are not justified. (See *People v. Quiroga* (1993) 16 Cal.App.4th 961, 966 ["First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."].)

Defendant has taken the officer's comments out of context. At trial, defense counsel asked Officer Cervantes why he did not investigate whether defendant was under the influence of a controlled substance, and the officer replied, "[Defendant] became argumentative and confrontational." Defense counsel asked, "And then at that point you arrested him for resisting or delaying a peace officer . . . ?" Officer Cervantes

10

replied, "After the incident, yes, ma'am." Thus, Officer Cervantes did not arrest defendant solely for arguing with him.

Defendant also contends his non-verbal conduct did not rise to the level of conduct punishable by section 148, subdivision (a). He relies on *People v. Quiroga, supra,* 16 Cal.App.4th 961, for support. In that case the defendant was inside an apartment when an officer entered without a warrant. The defendant demanded that the officer leave, and argued before complying with the officer's directives to sit down on a couch and to remove his hands from his pockets. Once seated, the defendant again argued with the officer before complying with the officer's order to put his hands on his lap, and again before complying with the officer's directive to stand up. (*Id*. at p. 964.) The appellate court recognized that the defendant had "complied slowly" with the officer's orders, but concluded that section 148 does not criminalize "a person's failure to respond with alacrity to police orders." (*Id*. at p. 966.)

Here, as we set forth in more detail in the Facts section of this opinion, defendant did not simply respond slowly to Officer Cervantes' commands; he failed to respond to those commands at all. Thus, *Quiroga* does not assist defendant. In addition to his non-compliance with orders, defendant attempted to walk away from the officers, an affirmative act of defiance that escalated the situation and created an office safety risk and a delay in the investigation. This evidence is more than sufficient to support the verdict. (See *In re Muhammed C*. (2002) 95 Cal.App.4th 1325, 1330-1331 [evidence that defendant failed to obey the officer's lawful orders to step away from the patrol car supports a finding of a § 148 violation]; *In re Gregory S*. (1980) 112 Cal.App.3d 764, 780 [finding a § 148 violation when a minor refused to identify himself, refused to respond to questions posed by an officer, walked away, and struggled when an officer took his arm]; *People v. Allen* (1980) 109 Cal.App.3d 981, 987-988 [flight from police officers is sufficient to constitute "delaying" a peace officer in the discharge of his duties if the fleeing individual was aware of the officer's desire to detain him].)

To the extent that appellant contends that his actions did not keep Officer Cervantes from investigating defendant's presence in the stairwell, defendant is mistaken.

11

Officer Cervantes reasonably believed that defendant's conduct posed a risk to officer safety, and that he could not question defendant about his presence in the stairwell until the officer confirmed that defendant was not armed. Due to defendant's failure to comply with the officer's directives, the questioning could not safely proceed. (See *People v. Lightsey* (2012) 54 Cal.4th 668, 728 [defendant obstructed officer's investigation of contraband in jail cell by refusing to comply with officer's commands, requiring officer to restrain defendant and remove him from the cell before investigating].)

In conclusion, the evidence presented by the People was more than sufficient for the jury to reasonably conclude that defendant was guilty of violating section 148, subdivision (a)(1). Since we have determined "that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15 of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.)

## DISPOSITION

The judgment of the trial court is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

MOSK, Acting P. J.

KRIEGLER, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.