Filed 5/21/14  P. v. Boyzo CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G048251 |
|     v. | (Super. Ct. No. 12WF2500) |
| FRED BOYZO, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
|     Defendant and Appellant. | |

It is ordered that the opinion filed April 29, 2014, be modified as follows:

The paragraph which begins at the bottom of page 8 and continues on the top of page 9, is modified to read in full as follows:

Boyzo waived the preparation of a probation report and requested immediate sentencing after entry of the verdict.  The trial court denied Boyzo's request to reduce count 1 to a misdemeanor "based on his history and the fact that he's had other drug cases and other convictions before, including felonies . . . ."  The court then suspended imposition of sentence, and placed Boyzo on probation for three years under

various terms and conditions, including time in the county jail.  Initially, the court indicated it would sentence Boyzo to 270 days in jail and would award him 274 days custody credits.  After some discussion with the prosecutor, the court increased the jail sentence to 274 days in order to equal his 274 days in credits.  The court indicated it wanted to give Boyzo a credit for time served sentence so the jail would know "that he gets out."  The court stated:  "It might be cleaner that way.  I will even put it in here, defendant to be released if no holds or warrants.  [¶] I will make it 274.  That would be cleaner.  So I'm giving him credits for 274."  Boyzo neither objected to the court's decision, nor did he request the court apply any financial equivalent against his fines."

The modification does not change the judgment.  The petition for rehearing is DENIED.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>FRED BOYZO,<br><br>    Defendant and Appellant. | G048251<br><br>(Super. Ct. No. 12WF2500)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Michael P. Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Fred Boyzo of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1), possession of drug paraphernalia (Health & Saf. Code, § 11364.1, subd. (a); count 2), and resisting arrest (Pen. Code, § 148, subd. (a); count 3). The trial court suspended imposition of sentence and placed Boyzo on probation for three years. The court awarded 274 days presentence custody credits for the time Boyzo served in jail before trial (137 actual days & 137 conduct credits) and imposed several fees and fines that collectively totaled $570.

Boyzo claims the trial court committed instructional error by modifying CALCRIM No. 2656, the instruction for resisting arrest, and he challenges the constitutionality of CALCRIM No. 220, the standard reasonable doubt instruction. He also claims the trial court abused its sentencing discretion by failing to convert four days of presentence custody credits into a monetary equivalent, which could then be used to pay his fines. None of his contentions has merit and we affirm the judgment.

**FACTS**

In September 2012, seven or eight officers from the Garden Grove Police Department executed a search warrant at Boyzo's residence. When the officers arrived at the home, Officers Vincente Vaicaro and Donald Hutchins went to the front door while the other officers detained several individuals in the front yard. Vaicaro and Hutchins wore black polo shirts with "Garden Grove Police" visible on the left hand side, and "Police" written on the back. They also wore their police issued duty belts, and Hutchins wore his badge on his belt.

Hutchins testified he had a clear view into the residence from the open front door, and he saw Boyzo standing about 10 to 15 feet from the door with his back facing the officers. With his gun drawn, Hutchins yelled, "'Garden Grove Police Department. Search Warrant. Demand Entry.'" Hutchins testified Boyzo slowly turned around and said, "Fuck you. I don't give a fuck." Vaicaro remembered the statement as "'Fuck you.

2

Get the fuck out of here.'" Both officers testified Boyzo then assumed a "fighting stance" with balled fists raised slightly and his feet apart.

Hutchins ordered Boyzo to get down on the ground at least twice, but Boyzo did not comply. Vaicaro announced himself as a police officer and directed Boyzo to "[p]ut [his] hands up." Boyzo ignored him. Both officers entered the home and then holstered their weapons because Boyzo was unarmed. Although Hutchins and Vaicaro repeatedly shouted at Boyzo to put his hands up and get on the ground, Boyzo did not comply.

Vaicaro and Hutchins grabbed Boyzo's arms in an effort to control him. Boyzo tensed his body and refused to submit to Vaicaro's direction to put his hands behind his back. Vaicaro repeatedly directed Boyzo to relax, but Boyzo did not comply. Vaicaro tripped Boyzo, and the two officers and Boyzo fell to the ground in a heap. Vaicaro and Hutchins continued to direct Boyzo to relax and place his hands behind his back, but Boyzo would not cooperate. In fact, the officers testified that Boyzo "turtle[ed] up" by putting his hands under his torso. After a minute or so of trying to force Boyzo's arms into a position that would allow the officers to cuff him, Hutchins succeeded in pulling Boyzo's hands out and a third officer cuffed them. Boyzo was then led out of the residence without further incident.

After Boyzo was arrested and transported to jail, the officers searched his home. The search yielded 387 milligrams of methamphetamine and a pipe for smoking it. Boyzo admitted the methamphetamine and paraphernalia belonged to him.

Boyzo, a convicted felon with a prior conviction for drug possession, testified and denied resisting the officers' attempts to arrest him. He claimed that loud music prevented him from hearing the officers announce themselves or give him directions. Boyzo said he did not know the officers were in his home until they grabbed him from behind and hit him in the head. Boyzo also testified that when he realized he had been grabbed by police officers, he put his hands behind his back and complied with

3

the officers' directions. He denied resisting arrest. Boyzo also claimed the officers did not advise him of his rights, and that they lied about his initial statement to them and his later admission.

## DISCUSSION

### 1. *Jury Instructions*

Boyzo challenges the constitutionality of two jury instructions, the standard resisting arrest instruction as modified by the court and the standard reasonable doubt instruction.

"In determining the correctness of jury instructions, we consider the instructions as a whole. [Citation.] An instruction can only be found to be ambiguous or misleading if, in the context of the entire charge, there is a reasonable likelihood that the jury misconstrued or misapplied its words. [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.)

#### A. *Resisting Arrest*

Count 3 alleged Boyzo willfully resisted Vaicaro in the performance of his police duties. Penal Code section 148, subdivision (a)(1) states, "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

The trial court instructed the jury with CALCRIM No. 2656 as follows: "The defendant is charged in Count 3 with resisting a peace officer in the performance or attempted performance of his duties in violation of Penal Code section 148(a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. Vince Vaicaro was a peace officer lawfully performing or attempting to perform his duties as a peace officer; [¶] 2. The defendant willfully resisted Vince Vaicaro in the performance

4

or attempted performance of those duties; [¶] AND [¶] 3. When the defendant acted, he knew, or reasonably should have known, that Vince Vaicaro was a peace officer performing or attempting to perform his duties. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] A person who is employed as a police officer by the Garden Grove Police Department is a peace officer. [¶] The duties of a police officer include the service of a valid search warrant. [¶] A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties. Instruction 2670 explains when force is unreasonable or excessive. [¶] *The People allege that the defendant resisted by doing the following:* [¶] *Failing to comply with officer commands;* [¶] *Tensing up his body;* [¶] *Failing to place hands behind his back.* [¶] You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of the alleged acts of resisting a peace officer who was lawfully performing his or her duties, and you all agree on which act he committed." (Italics added.)

Pointing to the italicized portion of the instruction, Boyzo claims the instruction as given erroneously led the jury to believe one may resist arrest by merely refusing to comply with an officer's commands. Boyzo asserts the instruction calls for the equivalent of a directed verdict. He made no objection on either ground at trial, but he contests the Attorney General's forfeiture argument by pointing to Penal Code section 1259. We address the merits of Boyzo's argument, if for no other reason than to forestall the inevitable ineffective assistance of counsel claim that would follow. In the end, we find Boyzo's claim meritless.

"In most cases, [Penal Code] section 148 has been applied to physical acts, such as fleeing from a proper investigatory detention by a police officer [citations], brandishing a gun at an officer [citations], passively resisting an arrest by going limp [citation], or struggling physically with an officer making an arrest [citations] or

5

attempting to break up a fight." (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 967 (*Quiroga*).) Penal Code section 148 has also been applied to "a combination of verbal and physical interference with an officer's performance of his duties." (*Quiroga*, at p. 967.)

Boyzo contends that failing to comply with officer commands without more is not sufficient to prove resisting arrest as a matter of law. He primarily relies on this quote from *Quiroga*: "[I]t surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders." (*Quiroga*, *supra*, 16 Cal.App.4th at p. 966.) But he also cites the following passage from *MacKinney v. Nelsen* (9th Cir. 1995) 69 F.3d 1002, 1006 (*Mackinney*): "No reasonable officer could have thought that complying with a police order slowly could be a violation of [Penal Code section] 148." (*Ibid*.) From these quotes, Boyzo claims "mere refusal to comply with commands, without more, does not violate [Penal Code] section 148." (*Ibid*.) However, we find *Quiroga* and *Mackinney* distinguishable.

In *Quiroga*, police officers entered an apartment after observing, through the open front door, one of the occupants holding what appeared to be a marijuana cigarette. As the officers entered, the defendant stood up from a couch and began to walk into the hallway. One of the officers ordered the defendant to sit back down. The defendant "argued before complying with the order." (*Quiroga*, *supra*, 16 Cal.App.4th at p. 964.) Moments later, the officer, noticing that the defendant was reaching with his right hand between the couch cushions and the side of the couch, ordered the defendant to put his hands on his lap. "Again [the defendant] was 'very uncooperative' but 'finally' obeyed the order." (*Ibid.*) Shortly thereafter, the officer ordered the defendant to stand up. The defendant "refus[ed] several times" before he finally complied. (*Ibid*.) And shortly after that, the officer found a quantity of cocaine under a couch cushion where he had seen the defendant reaching, and placed the defendant under arrest.

6

The appellate court stated, "We find nothing in appellant's conduct before his arrest that might justify a charge of violating Penal Code section 148. It is true that [defendant] complied slowly with [the police officer's] orders, but it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders." (*Quiroga*, *supra*, 16 Cal.App.4th at p. 966.)

In *Mackinney*, the defendant was arrested for vandalism, a violation of Penal Code section 594. His purported crime was writing on a sidewalk with chalk. When police officers saw what the defendant was doing, they told him to stop writing on the sidewalk. The defendant did not comply, and he subsequently sued the City of Berkeley and the officers involved in the arrest for violation of his civil rights. (42 U.S.C. § 1983; *MacKinney*, *supra*, 69 F.3d at p. 1006.)

In discussing the issue of whether the officers had probable cause to arrest the defendant, the appellate court noted that in 1992 Penal Code section 594 prohibited defacing property with "'paint or any other liquid.'" (*Mackinney*, *supra*, 69 F.3d at p. 1005.) The appellate court noted that chalk was not a paint or a liquid, so this portion of the statute did not provide the police with probable cause to arrest the defendant. (*Ibid.*) In addition, the appellate court concluded the officers did not have probable cause to arrest the defendant for a violation of Penal Code section 148 because the officers directed the defendant to stop writing with chalk while they were in an unmarked patrol vehicle and because the defendant complied with their order, although perhaps not as quickly as the police would have liked. (*Mackinney*, at pp. 1005-1006.)

Here, by contrast, Boyzo refused to cooperate with the officers until handcuffs left him no other option. He refused to follow any directions and used his body to resist the officer's attempts to control him. In truth, Boyzo orchestrated his arrest and made it more dangerous for all involved by his refusal to comply. Thus, although Boyzo's argument has merit in the abstract, it is meritless here. Even assuming error, we

7

are convinced beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Flood* (1998) 18 Cal.4th 470, 507.)

### B. Reasonable Doubt

Boyzo also challenges the constitutionality of CALCRIM No. 220 by asserting it does not define reasonable doubt in a manner consistent with the requirements of due process. He asserts, "[i]instructing the jurors only that they must feel an abiding conviction of the truth of the charge is indistinguishable from the clear and convincing standard." We disagree.

CALCRIM No. 220 has been repeatedly upheld as an accurate statement of the reasonable doubt standard with the "'abiding conviction'" language. (See *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30-32.) Boyzo acknowledges this fact, but claims "the rejection [of his argument] has always been based on precedents that were not presented with, and did not address, the issue." He asserts that without the moral certainty language of former CALJIC No. 2.90 the jury was without guidance as to the level of certainty required. But in *Victor v. Nebraska* (1994) 511 U.S. 1, 14-15, the United States Supreme Court stated: "An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, *correctly states the government's burden of proof.* [Citation.]" (Italics added.) Thus, CALCRIM No. 220 meets federal due process requirements.

## 2. Abuse of Sentencing Discretion

Boyzo asserts the trial court failed to convert four days of presentence custody credits to cash. He does not claim the court made an error in the calculation of custody credits, only that the court abused its discretion. Not so.

Boyzo waived the preparation of a probation report and requested immediate sentencing after entry of the verdict. The trial court denied Boyzo's request to reduce count 1 to a misdemeanor "based on his history and the fact that he's had other drug cases and other convictions before, including felonies . . . ." The trial court then

8

suspended imposition of sentence, and placed Boyzo on probation for three years under various terms and conditions. Initially, the court indicated it would award 270 days custody credits. The prosecutor pointed out that Boyzo was entitled to 274 custody credits, and in an effort to ensure Boyzo's immediate release from custody, the trial court increased its custody credit award from 270 to 274. Boyzo neither objected to the court's decision, nor did he request the court apply a financial equivalent against his fines.

As Boyzo notes, Penal Code section 2900.5, subdivision (a), states, in pertinent part, "In all felony and misdemeanor convictions . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment, or credited to any fine . . . at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence." (Pen. Code, § 2900.5, subd. (a).) Thus, Boyzo is correct to the extent he argues the trial court had discretion to apply custody credits to his fine. However, nothing in the record demonstrates the trial court was unaware of its discretion in this case. As the Attorney General notes, when faced with a silent record such as this "we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) Consequently, we find no error.

## DISPOSITION

The judgment is affirmed.

THOMPSON, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.