[No. A058769. First Dist. Div. One. June 22, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO CHRIS QUIROGA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1., this opinion is certified for partial publication. The portions directed to be published follow.

## COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Richard Rochman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NEWSOM, J.**—Armando Chris Quiroga (hereafter appellant) appeals a judgment of conviction after a jury trial for charges of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) and resisting a peace officer (Pen. Code, § 148). The court placed him on probation for 3 years and ordered him to serve 180 days in county jail with credits of 163 days for time served.

The prosecution rested its case chiefly on the testimony of Greg Stefani, a Ukiah Police Department officer. About 2:30 a.m. on May 1, 1992, Officer Stefani responded to a report of a noisy party in an apartment complex near Ukiah. After waiting for two other officers to join him, he knocked, and a woman opened the door. He then saw another woman sitting on the floor as a man handed her "what appeared to . . . be a marijuana cigarette." He could "smell the odor of marijuana." Walking into the room, he asked for the marijuana cigarette.

At this point, appellant stood up from a couch and started to walk into the hallway. "Mostly for safety reasons," Officer Stefani ordered him to sit back down on the couch. Appellant argued before complying with the order. In Stefani's words, "Mr. Quiroga was very uncooperative telling me that I needed a reason to be in the house, to get out of the house, that . . . I needed a search warrant to come into the house." As appellant argued, Stefani noticed that he had his hands in his pocket and appeared to be "hanging onto something in his pocket . . . ." He started "to pull his hand out" and then "put it back, and seemed very nervous." "Finally," appellant sat down and Officer Stefani directed his attention to the suspect he had seen with the marijuana cigarette.

Before long, appellant again caught Officer Stefani's attention. Stefani testified, "I looked over at Mr. Quiroga again. He was still telling us to leave the apartment and that we had no legal right to be there. And I saw with his right hand he was reaching between the couch cushions and the arm of the couch. . . . He seemed to be trying to hide his movements from me. As I would look at him he would pull his hand out, put it down . . . ." Stefani ordered appellant to put his hands on his lap. Again he was "very uncooperative" but "finally" obeyed the order. Officer Stefani still didn't "feel comfortable" and ordered appellant to stand up. After refusing several times, he stood up as Officer Stefani "pulled on his arm" and went to a corner of the room where another officer could observe him.

Officer Stefani then looked under the cushion of the couch where appellant "had been reaching" and found a clear plastic bag with a white powder.

Chemical analysis later showed that it contained .92 grams of cocaine. Although appellant denied any knowledge of the item, Officer Stefani placed him under arrest and took him to the police department and then to the county jail. Stefani acknowledged that appellant displayed no symptoms of cocaine use and had no drug paraphernalia on his person. He believed that the apartment was rented by the woman who had answered his knock.

After his arrest, appellant refused to give his name although he was asked repeatedly for personal identification "in the car, and then several times between there and the police department and at the police department." Stefani testified, "He refused to tell me his name. As I recall, several times I would ask him his name, and he would say Puddin' Tane, ask me again I'll tell you the same."

Upon arrival at the jail, appellant persisted in refusing to give his name, frustrating attempts to book his arrest in official police records. After "approximately 30 minutes," one of the correctional officers recognized appellant and confirmed his identity with a "picture from his file." Appellant then acknowledged his name for the first time. After learning his identity, the police ran a warrant check that revealed an outstanding warrant for a drug charge.

Before trial, defense counsel moved *in limine* to exclude any "testimony to the fact that [appellant's] arrest warrant from Shasta County was for a violation of Health and Safety Code section 11352" and requested an order prohibiting prosecution witnesses from referring "to the substance of the arrest warrant." The court ruled that it would "sanitize it completely" and permit no more than a reference to an arrest warrant. Accordingly, Officer Stefani testified the warrant check disclosed "that Mr. Quiroga was wanted on an outstanding out-of-county warrant, arrest warrant."

In this appeal, appellant maintains that there was no evidence to support the conviction of resisting a peace officer and presents a somewhat convoluted argument that the admission of evidence of the arrest warrant compels reversal of his felony conviction for possession of caine. The trial court admitted the evidence for its supposed relevance to charge of resisting an officer (Pen. Code, § 148). Appellant argues that, because he "should never have been tried on the Penal Code section 148 charge[], evidence concerning the warrant should never have been introduced" in his trial for the felony charge. The implicit premise in the argument apparently is that the prosecution engaged in a kind of misconduct by bringing the misdemeanor charge solely to introduce prejudicial evidence into the felony trial. We hold that there was in fact evidence to support appellant's conviction for resisting a peace officer.

In analyzing the charge of resisting a peace officer, we see distinct constitutional and statutory issues with respect to (1) appellant's conduct in the apartment before his arrest, (2) his refusal to tell his name in the police car and police station while en route to jail, and (3) his refusal to disclose his identity in the booking interview at jail.

We find nothing in appellant's conduct before his arrest that might justify a charge of violating Penal Code section 148. It is true that he complied slowly with Officer Stefani's orders, but it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders. Moreover, appellant possessed the right under the First Amendment to dispute Officer Stefani's actions. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." (*Houston* v. *Hill* (1987) 482 U.S. 451, 461 [96 L.Ed.2d 398, 411-412, 107 S.Ct. 2502].) Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." (*Id.* at pp. 462-463 [96 L.Ed.2d at pp. 412-413].) While the police may resent having abusive language "directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." (*Duran* v. *City of Douglas, Ariz.* (9th Cir. 1990) 904 F.2d 1372, 1378.)

Following appellant's arrest, the issue of constitutional protections shifts to the Fifth Amendment. ■ It is true that certain First Amendment rights survive arrest and incarceration (*Procunier* v *Martinez* (1974) 416 U.S. 396 [40 L.Ed.2d 224, 94 S.Ct. 1800]), but the area of custodial interrogation is specifically governed by the Fifth Amendment and should be analyzed solely under this constitutional provision even though the First Amendment protects similar values. (See *Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The Fifth Amendment issues raised by Officer Stefani's questioning of appellant about his name en route to the jail are by no means simple, but we do not need to address them here.[1] ■ At this point, appellant's conduct did not violate Penal Code section 148 because it did not delay or obstruct a peace officer in the discharge of any duty within the meaning of the statute. The arrest had already been effected; appellant's noncooperation did not serve to delay or thwart his lawful detention. And it was still premature to ask the questions needed for booking appellant in jail. Although peace officers may sometimes find it convenient to fill out booking forms in the field, Officer Stefani had no compelling reason to complete the "booking sheet" until

---

[1]For the scope of interrogations protected by the Fifth Amendment, see *Rhode Island* v. *Innis* (1980) 446 U.S. 291 [64 L.Ed.2d 297, 100 S.Ct. 1682].

appellant arrived at jail, and in fact he did not attempt to do so until that time.

It is well established that, upon arrival at jail, the police could question appellant about his identity in a routine booking interview without implicating the Fifth Amendment. (*People* v. *Hall* (1988) 199 Cal.App.3d 914 [245 Cal.Rptr. 458]; *People* v. *Powell* (1986) 178 Cal.App.3d 36, 39 [223 Cal.Rptr. 475]; *United States* v. *Taylor* (4th Cir. 1986) 799 F.2d 126, 128; *United States* v. *McLaughlin* (8th Cir. 1985) 777 F.2d 388, 391; *United States* v. *Downing* (1st Cir. 1981) 665 F.2d 404, 406.) Thus, in *People* v. *Rucker* (1980) 26 Cal.3d 368, 387 [162 Cal.Rptr. 13, 605 P.2d 843], the Supreme Court observed, "The *Miranda* safeguards are not necessary at a proper booking interview at which certain basic information is elicited having nothing to do with the circumstances surrounding any offense with which the defendant has been charged."

We face, however, an issue of first impression in inquiring whether appellant's refusal to reveal his identity in the booking interview violated Penal Code section 148. In most cases, section 148 has been applied to physical acts, such as fleeing from a proper investigatory detention by a police officer (*In re Michael V.* (1974) 10 Cal.3d 676 [111 Cal.Rptr. 681, 517 P.2d 1145]; *In re Andre P.* (1991) 226 Cal.App.3d 1164 [277 Cal.Rptr. 363]; *In re Lavoyne M.* (1990) 221 Cal.App.3d 154 [270 Cal.Rptr. 394]; *People* v. *Lloyd* (1989) 216 Cal.App.3d 1425 [265 Cal.Rptr. 422]; *People* v. *Lopez* (1986) 188 Cal.App.3d 592 [233 Cal.Rptr. 207]; *People* v. *Allen* (1980) 109 Cal.App.3d 981 [167 Cal.Rptr. 502]), brandishing a gun at an officer (*People* v. *Wilson* (1964) 224 Cal.App.2d 738 [37 Cal.Rptr. 42], overruled on other grounds in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827, fn. 5 [48 Cal.Rptr. 366, 409 P.2d 206]), passively resisting an arrest by going limp (*In re Bacon* (1966) 240 Cal.App.2d 34 [49 Cal.Rptr. 322]), or struggling physically with an officer making an arrest (*In re Frederick B.* (1987) 192 Cal.App.3d 79 [237 Cal.Rptr. 338]; *People* v. *Olguin* (1981) 119 Cal.App.3d 39 [173 Cal.Rptr. 663]; *People* v. *White* (1980) 101 Cal.App.3d 161 [161 Cal.Rptr. 541]; *People* v. *Bugg* (1947) 79 Cal.App.2d 174 [179 P.2d 346]) or attempting to break up a fight (*In re Eddie D.* (1991) 235 Cal.App.3d 417 [286 Cal.Rptr. 684]; *People* v. *Derby* (1960) 177 Cal.App.2d 626 [2 Cal.Rptr. 401]; *People* v. *Powell* (1950) 99 Cal.App.2d 178 [221 P.2d 117]).

Several cases, however, have involved a combination of verbal and physical interference with an officer's performance of his duties. In *People* v. *Roberts* (1982) 131 Cal.App.3d Supp. 1 [182 Cal.Rptr. 757], the defendant shouted obscenities during the administration of a sobriety test and attempted to place himself between the officer and the suspect. In *In re Joe R.*

(1970) 12 Cal.App.3d 80 [90 Cal.Rptr. 530], the defendant interrupted an officer's interview of a suspect by asking hostile questions; when the police officer decided to question him, he shouted abuse and then physically resisted the officer, hitting him and struggling to avoid arrest.

Two cases of this sort have involved a refusal to give personal identification. In *People* v. *Martensen* (1926) 76 Cal.App. 763 [245 P. 1101], the defendant was stopped for driving at an excessive speed and refused to exhibit his driver's license or to disclose his name. He then started his motor with the apparent intention of driving away. When the officer stepped on the running board and reached into the car to turn the ignition switch, the defendant pushed the officer off the running board. In *People* v. *Randolph* (1957) 147 Cal.App.2d Supp. 836 [306 P.2d 98], the defendant refused to produce his driver's license and then "forcibly resisted the attempts of the officers to take him into physical custody." (*Id.* at p. 839.)

Only one decision clearly distinguishes between constitutionally protected speech and other conduct violating Penal Code section 148. In *In re Gregory S.* (1980) 112 Cal.App.3d 764 [169 Cal.Rptr. 540], the defendant refused to answer an investigating police officer's questions and began to walk away, declaring that he did not have to talk to the officer. "The officer took [the defendant] by the arm, whereupon [the defendant] struggled and attempted to pull away." (*Id.* at p. 771.) The court held that, while the defendant was free to refuse to identify himself or to answer questions, "[h]is forceful attempt to leave violated the statute." (*Id.* at p. 778.) The court in *In re Andre P.*, *supra*, 226 Cal.App.3d 1164, also addressed the First Amendment issue, holding that Penal Code section 148 is not constitutionally overbroad under the First Amendment. The decision assumed that the statute might be applied to speech but observed that it "nearly always has been applied to a wide range of conduct beyond speech." (*Id.* at p. 1175.)

This review of the case law leads to two conclusions. ▆ First, Penal Code section 148 is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation. Second, the statute must be applied with great caution to speech. Fighting words or disorderly conduct may lie outside the protection of the First Amendment (*Houston* v. *Hill*, *supra*, 482 U.S. 451 [96 L.Ed.2d 398, 107 S.Ct. 2502]), just as a properly limited booking interview may lie outside the Fifth Amendment. But the areas of unprotected speech are extremely narrow. ▆▆▆ The court in *In re Gregory S.*, *supra*, 112 Cal.App.3d 764, properly excluded protected speech from consideration

in considering the sufficiency of the evidence.[2] A similar distinction between protected speech and other conduct coming within the statute could have been made in some, if not all, of the other four decisions discussed above which contain an element of verbal resistance to a police officer.

 We turn next to the statutory context in inquiring whether, in the narrow context of a booking interview, appellant's refusal to disclose his name violated Penal Code section 148, subdivision (a). The statute punishes "[e]very person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, *when no other punishment is prescribed . . . .*" (Italics added.) Two other statutes in fact specifically punish a suspect's refusal to disclose his identity. Penal Code section 148.9, subdivision (a), punishes "[a]ny person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer . . . upon a lawful detention or arrest of the person . . . ." Penal Code section 647, subdivision (e), punishes "[e]very person . . .

"· · · · · · · · · · · · · · · · · · · · · · · · ·

"(e) [w]ho loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself or herself and to account for his or her presence when requested by any peace

---

[2]Although it did not analyze the constitutional issue, the court was correct in regarding the defendant's refusal to identify himself or to answer questions as protected speech. In decisions involving Fourth Amendment protections, the Supreme Court has repeatedly said that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions . . . . The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." (*Florida* v. *Royer* (1983) 460 U.S. 491, 497-498 [75 L.Ed.2d 229, 235-237, 103 S.Ct. 1319]; see also *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855]; *Brown* v. *Texas* (1979) 443 U.S. 47 [61 L.Ed.2d 357, 99 S.Ct. 2637].) If the police officers have cause for a temporary detention under *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." (*Berkemer* v. *McCarty* (1984) 468 U.S. 420, 439 [82 L.Ed.2d 317, 334, 104 S.Ct. 3138].) Although the Supreme Court has not articulated the precise constitutional basis for the suspect's right to silence, it may reflect the First Amendment protection against compelled speech recognized in such cases as *Wooley* v. *Maynard* (1977) 430 U.S. 705 [51 L.Ed.2d 752, 97 S.Ct. 1428] and *Board of Education* v. *Barnette* (1943) 319 U.S. 624 [87 L.Ed. 1628, 63 S.Ct. 1178, 147 A.L.R. 674]. (See Gaebler, *First Amendment Protection Against Government Compelled Expression and Association* (1982) 23 B.C.L. Rev. 995-1023.)

officer so to do, if the surrounding circumstances are such as to indicate to a reasonable person that the public safety demands such identification."[3]

In our opinion, these two statutes concern entirely distinguishable situations and do not favor any particular resolution of the issue here on appeal. However, the statutory provisions concerning arrest for a misdemeanor or infraction cannot be so readily harmonized with Penal Code section 148. These statutes deal specifically with the possibility that an offender will refuse to disclose personal identity. Thus, Penal Code section 853.5 provides that when a person "is arrested for an infraction, a peace officer shall only require the arrestee to present his driver's license or other satisfactory evidence of his identity for examination and to sign a written promise to appear. Only if the arrestee refuses to present such identification or, refuses to sign such a written promise may the arrestee be taken into custody." Similarly, Penal Code section 853.6, subdivision (i)(5), provides: "Whenever any person is arrested by a peace officer for a misdemeanor, that person shall be released according to the procedures set forth by this chapter unless one of the following is a reason for nonrelease, . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) The person could not provide satisfactory evidence of personal identification." Vehicle Code sections 40302 and 40305 contain essentially parallel provisions. (See *People* v. *Monroe* (1993) 12 Cal.App.4th 1174 [16 Cal.Rptr.2d 267].)

■ These statutory provisions lead to the conclusion that a refusal to disclose personal identification following arrest for a misdemeanor or infraction cannot constitute a violation of Penal Code section 148. In the case of minor offenses, the Legislature has established other ways of dealing with such nondisclosure. ■ Appellant argues that this conclusion also militates against the interpretation of Penal Code section 148 as applying to nondisclosure of identity in felony arrests because the statute cannot be construed as applying only to felony cases. The issue turns on the word "punishment" in the exception "when no other punishment is prescribed." Section 148 can reasonably be construed as applying to nondisclosure of identity following arrest for felonies, but not minor offenses, if this exception applies to the provisions cited above dealing with arrests for minor offenses.

■ "Generally, the provisions of a penal statute are to be construed according to the fair import of their terms, with a view to effect its objects

---

[3]In *Kolender* v. *Lawson, supra,* 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855], the United States Supreme Court held Penal Code section 647, subdivision (e), to be unconstitutional as construed by *People* v. *Solomon* (1973) 33 Cal.App.3d 429 [108 Cal.Rptr. 867].

and to promote justice. [Citations.] When the statute is susceptible of two reasonable constructions, however, the defendant is ordinarily entitled to that construction most favorable to him." (*People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 435 [155 Cal.Rptr. 704, 595 P.2d 139].) Hence, "an ambiguous exception to a penal statute . . . must be construed liberally in favor of persons seeking its protections." (*Bale* v. *San Jose Police Department* (1984) 158 Cal.App.3d 168, 173 [204 Cal.Rptr. 514].)

■ Applying these principles, we conclude that in the context of Penal Code section 148 the word "punishment" is sufficiently ambiguous that it should be construed to include the detention authorized by Penal Code sections 853.5 and 853.6, subdivision (i)(5), and Vehicle Code sections 40302 and 40305 as a sanction for an arrestee's failure to reveal personal identity. The exception to Penal Code section 148, "when no other punishment is prescribed," can either be read literally as referring to other criminal sanctions or more liberally as meaning "when no other provision in the Penal Code is applicable." Though it strains the ordinary usage of the word "punishment," the latter interpretation is reasonable in this context. The phrase was obviously intended to harmonize section 148 with other provisions of the Penal Code; the use of the word "punishment" thus can best be construed, not as limiting the scope of the statutory exception, but as merely reflecting the fact that the proscriptions of the Penal Code usually involve punishment in some sense.

In terms of public policy, we see nothing anomalous in distinguishing between felony and minor offenses. In the case of the booking of an arrest for a felony offense, there is a stronger public interest in discovering the identity of a suspect that might reasonably justify criminal sanction. Furthermore, it would be untenable to say that the statutory treatment of minor offenses should govern an interpretation of Penal Code section 148 as it applies to booking interviews for felonies. The statutes dealing with arrests for misdemeanors and infractions plainly offer no indication of the legislative intent affecting the issue.

The routine booking interview is an indispensable procedure in the efficient administration of justice. (See Pen. Code, § 7, subd. 21; 4 Witkin Cal. Criminal Law (2d ed. 1989) § 1938, pp. 2290-2291.) Without knowing the identity of a suspect, it is impossible to arrange for bail or to conduct an arraignment. More generally, "[t]he regular and routine processing of individuals who have been arrested for suspected criminal conduct necessitates that the police obtain information to confirm the identity of the suspect, to provide for medical care if such is required, to identify next of kin in the event of an emergency, and to accomplish various other valid police functions directly related to booking." (*People* v. *Rucker, supra,* 26 Cal.3d at p. 392 (conc. and dis. opn. of Richardson, J.).)

A felony suspect's refusal to reveal his identity in the booking interview potentially places on society an "added burden of investigation and inquiry to identify and procure basic, otherwise innocuous and nonincriminating information about arrestees . . . ." (*People* v. *Weathington* (Ill.App.Ct. 1979) 76 Ill.App.3d 173 [31 Ill.Dec. 741, 394 N.E.2d 1059, 1063] (dis. opn.).) It is true that appellant's conduct in fact delayed booking by only 30 minutes, but the consequences might have been much more burdensome to the state if it were not for his fortuitous identification by a correctional officer.

In the words of Penal Code section 148, appellant's act of refusing to disclose his identity at the booking interview unquestionably served to resist, delay and obstruct the responsible peace officer in the discharge of his duties. The obstructive effect was as significant as the actions for which Penal Code section 148 has traditionally been applied; appellant impeded the administration of justice as effectively as if he had fled from an investigatory detention or physically struggled with a peace officer. In the absence of constitutionally protected speech, we hold that the jury could reasonably find that the nondisclosure came within the definition of the offense.[4]

We note that the prosecution pursued an entirely different analysis than that which we have adopted in this opinion. Seeking to admit evidence of the outstanding arrest warrant in another county, it argued that appellant resisted execution of the arrest warrant by refusing to reveal his identity. Under other facts, it may indeed be possible to violate Penal Code section 148 by delaying execution of a warrant. (See *Hudson* v. *State* (1975) 135 Ga.App. 739 [218 S.E.2d 905].) But the theory presupposes that appellant knew of the arrest warrant and that the peace officer was attempting to discharge his duty in executing it. The record contains no evidence to this effect. So far as revealed by the evidence, appellant resisted only the attempt to book him on the charge of possession of cocaine. The later discovery of an outstanding arrest warrant has no relevance to his criminal responsibility for this act.

---

[4]We have found little guidance in a survey of decisions in other states. The few decisions reversing convictions for refusal to reveal personal identity offer tenuous authority. An appellate court decision in Illinois, *People* v. *Weathington, supra,* 394 N.E.2d 1059, was affirmed by the Supreme Court of that state on narrow grounds not applicable here. (*People* v. *Weathington* (1980) 82 Ill.2d 183 [44 Ill.Dec. 496, 411 N.E.2d 862].) Though well reasoned, *City of Dayton* v. *Peterson* (1978) 56 Ohio Misc. 12 [9 Ohio Op.3d 353, 381 N.E.2d 1154], and *State* v. *Muldrow* (1983) 10 Ohio Misc.2d 11 [460 N.E.2d 1177], are municipal court cases which do not represent controlling authority even in Ohio. The decision in *State* v. *Hauan* (1984 Iowa Ct.App.) 361 N.W.2d 336, rests on constitutional grounds not present here. Other decisions affirming convictions for nondisclosure of identity involve the entirely distinguishable situation of a refusal to give a driver's license on a traffic stop (e.g., *Hall* v. *State* (1991) 201 Ga.App. 328 [411 S.E.2d 274] or ignore constitutional issues noted in this opinion. (*Waynesville* v. *Combs* (1990) 66 Ohio App.3d 292 [584 N.E.2d 9]; *State* v. *McCrone* (1989) 63 Ohio App.3d 831 [580 N.E.2d 468]; *Township of E. Brunswick* v. *Malfitano* (1970) 108 N.J.Super. 244 [260 A.2d 862]; *Logan* v. *Swift* (1976 La.Ct.App.) 327 So.2d 168 [83 A.L.R.3d 231]; *Bailey* v. *State* (1989) 190 Ga.App. 683 [379 S.E.2d 816]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied July 22, 1993, and appellant's petition for review by the Supreme Court was denied September 30, 1993.

*See foonote, *ante*, page 961.