Filed 12/18/15  P. v. Vasquez CA3
Opinion on remand from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077226 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F03561) |
| v. | OPINION ON REMAND |
| ABRAN VASQUEZ, | |
| Defendant and Appellant. | |

After a motion to suppress the evidence against him was denied, defendant Abran Vasquez pled no contest to being a felon in possession of a firearm and was sentenced to two years in prison.  On appeal, he contends the court erred in failing to suppress the evidence against him.  We initially issued an opinion in which we disagreed and affirmed.  Defendant petitioned for review, and the California Supreme Court granted

1

that petition and transferred the matter back to us to reconsider in light of *Arizona v. Gant* (2009) 556 U.S. 332 [173 L.Ed.2d 485]. Upon reconsideration, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

At 10:19 p.m. on May 23, 2014, uniformed Sacramento Police Officer Brian Surjan was driving his marked patrol car in the area of North Avenue and Palmetto Street when he saw a bicyclist wearing a backpack pedaling on the wrong side of the road toward him without a headlight. As the officer drove closer, the bicyclist, who was later identified as defendant, immediately got off the bicycle, dropped it, and went into the front yard of 901 North Avenue. As defendant entered the front yard, the officer (who was now out of his patrol car and standing outside of the yard) told him to stop. Traveling on the wrong side of the road and biking at night without a light are violations of the Vehicle Code. Defendant did not stop and "continued to walk away from [the officer]." The officer decided not to go inside the yard because there were two pit bulls inside the yard, which was surrounded by a four-feet high chain-link fence with a rolling gate. The front yard was "fairly large" and the house was set "fairly far back." Defendant continued walking toward the house, despite the officer telling him again to stop. Defendant turned toward the officer, but continued walking toward the house, backwards, asking why. The officer said he needed to talk to him and to come toward the officer. Defendant kept asking why and what he did wrong, in an argumentative tone.

The officer said he had broken the law by riding without a bike light and that the officer was ordering him to come toward the officer. The officer ordered defendant more times to walk over to him. After about two minutes of the officer telling defendant that he needed to walk over to him, defendant took off his backpack, dropped it on the ground, and walked over to the officer. At the same time, a woman came out of the house and began walking toward them. Defendant yelled at the woman to take the backpack inside, but the officer told her not to touch the backpack and take the two dogs

2

inside. Eventually, she did "grab[] the dogs." The officer opened the gate and handcuffed defendant for resisting and delaying the officer in his duties. A sergeant arrived and retrieved the backpack from the yard, which was 15 feet from the entrance of the yard, and put the backpack into the patrol car. Defendant was also put inside the patrol car. The police then searched the backpack, which had a rifle containing a live round, a key ring with six shaved keys, and seven bottles of prescription medications belonging to others.

## DISCUSSION

Defendant contends "the trial court erred in denying the motion to suppress because the warrantless entry into the curtilage of [his] property was without an exception to the warrant requirement, there was no probable cause to arrest him, and the search of his backpack was not justifiable as a search incident to arrest."

We begin with the probable cause to arrest defendant. It is uncontroverted that the officer saw defendant commit two Vehicle Code violations: riding at night without a light and riding a bicycle on the wrong side of the street. (Veh. Code, §§ 21201, subd. (d)(1), 21650.1.) Based on these traffic infractions, the officer had a basis, at the very least, to detain defendant. Then, when defendant ran into his front yard and refused the officer's repeated instructions to stop, there was probable cause for the officer to believe defendant was resisting or evading him in the performance of his duties, i.e., trying to detain defendant for the Vehicle Code violations. (*People v. Curtis* (1969) 70 Cal.2d 347, 356, fn. 6 ["[Penal Code] section 148 penalizes even passive delay or obstruction of an arrest, such as refusal to cooperate"], disapproved on another ground in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222, fn. 19; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1330 ["a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car"].)

3

Defendant's attempt to claim that his conduct in not complying with the officer's orders immediately did not rise to the level of resisting an officer because all he did was "fail[] to respond with alacrity to police orders" (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 966) belies the record. He did much more. He refused the officer's initial demand to stop when he entered his front yard. He refused the officer's demand to stop once inside his front yard. He refused to come toward the officer when the officer said to and that the officer needed to talk with him. When the officer told defendant what he had done wrong (i.e., breaking the law for riding without a bike light), defendant still did not heed the officer until two minutes into the encounter. This sequence of events was more than just a simple failure to respond to the officer with alacrity.

The question then becomes whether the sergeant also had the right to seize and search his backpack incident to that arrest. Following *Gant*, we hold the answer is "no." There, police arrested Gant for driving on a suspended license and then handcuffed him and locked him in the back of a patrol car. (*Arizona v. Gant*, *supra*, 556 U.S. at p. 335 [173 L.Ed.2d at p. 491].) Police then searched his car and discovered cocaine in the pocket of a jacket on the backseat. (*Ibid.*) The United States Supreme Court held the search unreasonable. (*Id.* at p. 351 [173 L.Ed.2d at p. 501].) The Court explained as follows: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Ibid.*)

Applying *Gant* here, we hold the search unreasonable as well. An officer had handcuffed defendant for resisting and delaying an officer and only then did the sergeant retrieve the backpack from the yard and put it into the patrol car, at which time the

4

backpack was searched. Although defendant was also put into the patrol car at that time, there was no reason for police to believe that defendant could have accessed the backpack when it was searched because he was handcuffed and under the officer's control. Moreover, police could not have reasonably believed that evidence of the offense for which defendant was arrested might have been found in the backpack since he was arrested for resisting and delaying an officer. Thus, the safety and evidentiary interests that must be present to support such a search were not present here, and the search was unreasonable.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to vacate the order denying the motion to suppress and enter a new order granting that motion.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Murray, J.

5