NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 4 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10268 |
| Plaintiff-Appellee, | D.C. No. 1:11-cr-00074-LJO-1 |
| v. | |
| KENNETH CARTER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Chief Judge, Presiding

Argued and Submitted March 15, 2018
San Francisco, California

Before: WALLACE and BERZON, Circuit Judges, and BERG,** District Judge.

Following a contested evidentiary hearing, the district court found that Kenneth Carter violated his supervised release conditions by committing a new law offense and associating with a felon. Carter now appeals. We have jurisdiction under 28 U.S.C. § 1291. For the reasons explained below, we reverse.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

In reviewing an appeal of a supervised release revocation that challenges the sufficiency of the evidence, "we ask whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation by a preponderance of the evidence." *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010) (citations and internal quotation marks omitted).

**1.**     Carter's challenge to the district court's finding that he knowingly associated with a felon is straightforward: there was no evidence presented that Carter had knowledge that his step-son, Joseph Packard, had a felony conviction. *See id.* at 1128 ("[N]onassociation conditions prohibit only *knowing* contact with persons that the supervisee *knows* to be felons." (citations omitted)).

The district court found Carter violated the nonassociation condition because he (1) knew who Joseph Packard was; (2) communicated with Packard when Packard called and asked to come over; (3) allowed Packard to come over; and (4) interacted with Packard, a convicted felon, by leaving his house after Packard called and said he was outside with the police. The district court did not make a factual finding that Carter knew Packard was a felon.

The lack of a knowledge finding is understandable because no direct evidence was presented on this point. While there was evidence that Carter *could have* learned that Packard was a felon, a possibility alone is not sufficient to prove knowledge of Packard's felon status by a preponderance of the evidence. The finding that Carter

violated this condition of supervision must therefore be reversed.

**2.** Carter's challenge to the sufficiency of the evidence that he committed a new federal, state, or local crime is more complicated.

The district court first found that Carter interfered with the lawful activity of police officers, in violation of Penal Code § 148,[1] by yelling and swearing at the officers, and then running back into his residence. However, verbal criticisms directed at police officers are not, standing alone, sufficient to support a charge of interfering with police activity. *See, e.g.*, *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) (citing *Houston v. Hill*, 482 U.S. 451, 461, 462-63 (1987)). "[V]erbally confronting the police is a right all Americans have under the First Amendment." *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995). Furthermore, Carter's decision to run back into his residence could not have been interference, as Carter was not under arrest at the time and had been specifically asked by Deputy Hitter to go back inside. Thus, a rational fact finder could not conclude by a preponderance of the evidence that Carter committed a new law offense under § 148 based on Carter verbally criticizing the officers and running back into his home.

The district court also found that Carter violated California Penal Code § 148

---

[1] California Penal Code § 148 criminalizes "willfully resist[ing], delay[ing] or obstruct[ing] any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." Cal. Penal Code § 148(a)(1).

and so committed a new law violation when, after being ordered back out of his home, he delayed for 15 to 20 minutes before complying. However, to be guilty of an offense under § 148, a person must resist, obstruct, or delay officers who are acting lawfully at the time of the resistance, obstruction, or delay. *See Hooper v. County of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011). Accordingly, if the record does not contain sufficient evidence that, at the time Carter delayed coming out of his house, the officers had a lawful basis to order him outside for arrest, there can be no violation of § 148.

As stated, Carter's yelling at the officers and running inside did not provide a valid basis to seek his arrest, so the officers could not have ordered him from his home for those reasons. The government points to another potential justification for ordering Carter from his home: evidence that Carter threatened to get a gun before he ran back into the house. According to the government, this alleged threat caused the officers to seek Carter's arrest for a violation of California Penal Code § 69, which prohibits "deter[ring] or prevent[ing] an executive officer from performing any duty" by means of "any threat or violence." *See* Cal. Penal Code § 69(a).

The evidence presented on Carter's alleged threat was contested, with the parties offering conflicting evidence as to whether any officer ever heard a threat being made. Although there is some confusion in the record, at the sentencing hearing the district court ultimately declined to make a factual finding that Carter

threatened to get a gun. The district court did determine that the officers had a legitimate reason to be afraid that Carter was doing something dangerous when he ran back inside his house. But that finding was intertwined with the court's conclusion that Carter engaged in unlawful behavior by joining the crowd in verbally criticizing the officers and creating a chaotic situation. The district court unequivocally stated that Carter's new law violations were *not* based on the alleged gun threat.

The district court's express refusal to make a factual finding on the existence of a threat is understandable in light of the record. On the record before us, the equivocal evidence of a gun threat is insufficient to allow a rational fact finder to conclude, by a preponderance of the evidence, that the officers had a lawful basis to arrest Carter for a violation of California Penal Code § 69. With no adequate basis for arrest, there was also no adequate basis for an order to leave the home, and no violation of §148(a)(1) based on Carter's 15-to-20-minute delay in complying.

As the evidence was insufficient to support violations for committing a new law offense or associating with a felon, we reverse the district court's revocation of supervised release for those violations. However, Carter previously admitted to two other violations, failing to participate in drug testing and failing to follow the instructions of the probation officer. Those violations remain for resentencing on remand.

For these reasons, we **REVERSE** and **REMAND** for resentencing in accordance with this memorandum disposition. The mandate shall issue forthwith. *See* Fed. R. App. P. 2.

*United States v. Carter*, 17-10268

WALLACE, J., concurring in part and dissenting in part.

I concur with the majority in Section I. I dissent from Sections II and III because the evidence was sufficient to support Charge 3, the new law violation. A rational trier of fact could have found Carter violated California Penal Code § 148(a)(1) based on his 15 to 20 minute delay in coming out of his house. *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010).

Three cases discussed by the parties at length govern our review: *In re Chase C.*, 243 Cal. App. 4th 107 (2015); *In re Muhammed C.*, 95 Cal. App. 4th 1325 (2002); and *People v. Quiroga*, 16 Cal. App. 4th 961 (1993). Taken together, these cases stand for the proposition that repeatedly failing to comply with officers' orders, or complying slowly, does not necessarily constitute a violation of section 148, absent an affirmative gesture of defiance by the defendant. *Chase*, 243 Cal.App.4th at 119; *Muhammed C.*, 95 Cal. App. 4th at 1330; *Quiroga*, 16 Cal.App.4th at 966. This is true even if the officer has to use some force to induce the defendant's compliance. *Chase*, 243 Cal.App.4th at 119 (handcuffs); *Quiroga*, 16 Cal.App.4th at 964 (pulling on arm). This rule, however, is not without limitations. The statute uses the phrase "willfully . . . delay," so at some point, delay alone must turn from passive resistance into affirmative defiance. Cal. Penal Code § 148(a)(1). None of the cases is particularly helpful in this line-drawing

1

exercise; they offer no specifics about the time elapsed from the initial order to compliance. Here, the district court found as a fact that Carter heard the officers' announcements, but stayed inside the house. While Carter testified that he waited to come out until police called his name specifically, his exit also coincided with when police yelled they were about to break down his door and send in a canine. The government has the better argument. Viewing the evidence in the light most favorable to the government, that Carter responded to the officers' increasingly serious threats shows he knew they were calling him, and affirmatively defied their orders to come out. *King*, 608 F.3d at 1129.

The majority concludes that the officers had no lawful basis to order Carter outside for arrest, and therefore were not acting lawfully at the time of his resistance. I disagree. The district court found as a fact that, regardless of what Carter actually said, the officers reasonably believed he was going to get a gun. Further, Carter has not challenged this element of section 148. While Carter argues that he was not under arrest when first ordered to return to the house, nowhere does he contend that the officers acted unlawfully by later ordering him to exit it. The officers acted lawfully by ordering Carter to exit the house.

I hold a rational trier of fact could have found Carter violated California Penal Code § 148(a)(1). *King*, 608 F.3d at 1129.