**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| AMINA TRINITY BENNETT-MARTIN, | No. 19-55109 |
| Plaintiff-Appellant, | D.C. No. 5:16-cv-01165-MWF-KS |
| v. | |
| JOSE PLASENCIA, Officer, an individual and official capacity, | MEMORANDUM[*] |
| Defendant-Appellee, | |
| and | |
| SAN BERNARDINO VALLEY COMMUNITY COLLEGE; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted February 4, 2020[**]
Pasadena, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: IKUTA and CHRISTEN, Circuit Judges, and MARBLEY,*** District Judge.

Amina Trinity Bennett-Martin appeals the district court's entry of judgment in favor of Officer Jose Plasencia in her action for compensatory and punitive damages. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The district court did not err in concluding that Officer Plasencia was entitled to qualified immunity on the false-arrest claim because, at the time of the incident, it was not clearly established that an officer in Officer Plasencia's situation lacked probable cause to arrest a suspect for violating section 148(a)(1) of the California Penal Code.[1] *See D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Taking the facts in the light most favorable to Bennett-Martin, Officer Plasencia had reasonable suspicion that Bennett-Martin was defacing a fence with graffiti and asked Bennett-Martin for her identification in connection with his investigation of the offense. When Officer Plasencia began to conduct a records check, Bennett-Martin used a cell phone to make a call, during which she identified her location. Officer Plasencia directed Bennett-Martin to hang up the

*** The Honorable Algenon L. Marbley, United States Chief District Judge for the Southern District of Ohio, sitting by designation.

[1] Section 148(a)(1) provides that any "person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor. Cal. Penal Code § 148(a)(1).

phone, but she refused and put the phone on speaker. After a crowd began gathering at the bus stop, Officer Plasencia arrested Bennett-Martin for violating section 148(a)(1).[2] A reasonable officer in Officer Plasencia's situation could conclude that Bennett-Martin's refusal to comply with the command to end her phone call while an investigation was underway, and her disclosure of her location to a third party (raising security concerns), delayed or obstructed his lawful discharge of his duties, in violation of section 148(a)(1). Bennett-Martin has identified no case "where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Wesby*, 138 S. Ct. at 590 (citation omitted).

Bennett-Martin relies on *People v. Quiroga*, which held that a defendant had not violated section 148(a)(1) where an officer ordered the defendant to "put his hands on his lap" and the defendant "was 'very uncooperative' but 'finally' obeyed

---

[2] Bennett-Martin was subsequently prosecuted for violating this section, but the charges were dropped after trial.

the order." 16 Cal. App. 4th 961, 964 (1993).[3]  Bennett-Martin argues that

*Quiroga* clearly established that Officer Plasencia could not arrest her for violating

section 148(a)(1).  We disagree.  As a general rule, "opinions by . . . an

intermediate state court are insufficient to create a clearly established right." *See*

*Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012).  But even if

*Quiroga* could give rise to clearly established law in some situations, the decision

does not involve circumstances like the ones in this case.  Rather, a reasonable

officer in Officer Plasencia's situation could have believed that the situation he

encountered was less like the situation in *Quiroga* and more like the situations

officers encountered in *Young v. County of Los Angeles*, 655 F.3d 1156, 1169–70

(9th Cir. 2011), and *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1330 (2002),

where the arrestees did not comply with officers' commands and the courts held

that there was probable cause to arrest based on section 148(a)(1).  Indeed,

---

[3] *Quiroga* also held that the defendant's refusal to give his name to the officer did not violate section 148(a)(1) because "it did not delay or obstruct a peace officer in the discharge of any duty within the meaning of the statute."  16 Cal App. 4th at 966.  The court reasoned that the defendant had already been arrested, and so his refusal could not "delay or thwart his lawful detention"; and the defendant's refusal to give his name did not thwart the officer's discharge of his duty because it was "premature to ask the questions needed for booking [the defendant] in jail."  *Id.*  The dissent argues that we "conveniently ignor[e]" this situation in our analysis, **Dissent at 2**, but it is not relevant to our inquiry because Officer Plasencia contends that Bennett-Martin's pre-arrest conduct delayed or obstructed the discharge of his duties.

"[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (cleaned up). Because existing precedent does not place it "beyond debate," *id.*, that Officer Plasencia violated Bennett-Martin's constitutional rights, he is entitled to qualified immunity.[4]

The dissent argues that we construe the doctrine of qualified immunity too broadly and that *Quiroga*'s rule that "a violation of section 148(a)(1) requires more than mere noncooperation with an officer's orders," **Dissent at 3**, gave Officer Plasencia "fair warning" that violating Bennett-Martin's constitutional rights, **Dissent at 1**. We disagree. The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (cleaned up). And in the warrantless-arrest context, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Wesby*, 138 S. Ct. at 590 (citation omitted). Accordingly, we decline to contravene the Supreme Court's repeated

---

[4] The dissent "emphasize[s]" that Officer Plasencia arrested Bennett-Martin for violating section 148(a)(1) after he completed his investigation of the suspected vandalism. **Dissent at 5**. This fact has no bearing on our qualified immunity analysis, however.

warnings by "narrow[ing]" the doctrine of qualified immunity. **Dissent at 1**. Nor does our disposition "send a signal to officers" that they can arrest "young people" who provide their location to a parent. **Dissent at 5**. Rather, we merely hold that Bennett-Martin cannot recover compensatory and punitive damages from Officer Plasencia, because he could have reasonably believed there was probable cause to arrest Bennett-Martin for not complying with his orders during an investigation. We need not (and do not) decide whether Officer Plasencia lacked probable cause to arrest Bennett-Martin. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[5]

    **AFFIRMED**.

---

[5] For the first time on appeal, Bennett-Martin argues that the order to cease talking on her phone was unlawful because section 148(g) provides that "[t]he fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place . . . does not constitute, in and of itself, a violation of" section 148(a). But this argument is waived because it was not raised to the district court, so we decline to consider it. *See, e.g.*, *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989).

*Bennett-Martin v. Plasencia*, No. 19-55109

CHRISTEN, Circuit Judge, concurring:

I agree that Officer Plasencia is entitled to qualified immunity because an officer in his position could have reasonably concluded that there was probable cause to arrest Bennett-Martin for violating § 148(a)(1). As the dissent correctly observes, we do not need a case with identical facts to put an officer on notice that certain conduct violates established law. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But here, the controlling case law differentiates between responding to an officer's orders "with alacrity" and failing to comply with those orders altogether.[1] My view of the record is that Bennett-Martin's response fell somewhere in between those two descriptions. Officer Plasencia may have been wrong to conclude there was probable cause to arrest Bennett-Martin for violating § 148(a)(1), but I am not persuaded that his conclusion was unreasonable.

---

[1]     *Compare Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011) (affirming probable cause to arrest for violation of § 148 because plaintiff failed "to obey a police officer's lawful instructions" entirely), *with People v. Quiroga*, 20 Cal. Rptr. 2d 446, 448 (Ct. App. 1993) (finding insufficient evidence to support a § 148 violation because defendant "complied slowly" with an officer's pre-arrest orders, reasoning "it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity"). *See also In re Muhammed C.*, 116 Cal. Rptr. 2d 21 (Ct. App. 2002) (concluding a § 148 violation was supported because "there [was] no mere failure to respond here[;] Appellant affirmatively responded to the police orders with defiance").

1

I write separately to address an issue the court does not reach. Bennett-Martin argues on appeal that Officer Plasencia's order to end her telephone call was unlawful. Specifically, she argues that his direction violated her First Amendment right to record public police activity. We have repeatedly held that the First Amendment protects an individual's right to photograph and record matters of public interest, *see Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018), including activities of police officers, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). Bennett-Martin did not record Officer Plasencia's conduct, but she did place a call to her mother and at some point she put the call on speaker phone, to document her encounter with the police and to ensure that a family member knew what was happening. Bennett-Martin contends she was on the telephone for five minutes, and concedes that at least some of that time she was actively talking with her mother. It is easy to understand that an active conversation would interfere with an officer's investigation, but to the extent Bennett-Martin did not speak to her mother and only allowed her to listen, I question whether there is a meaningful distinction between that action and recording matters of public interest.

Had Bennett-Martin raised this issue in the district court, we may have had

occasion to decide whether Officer Plasencia's order to hang up was lawful.[2] As it is, the argument cannot be considered in response to Officer Plasencia's claim of qualified immunity because it was raised for the first time on appeal.

---

[2] Although we need not reach the issue, I also agree with the dissent that the facts here do not indicate that Bennett-Martin's call to her mother presented a legitimate officer safety concern.

FILED

MAR 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

A. MARBLEY, Chief District Judge, dissenting:

I respectfully dissent from my colleagues on the issue of qualified immunity. I believe they construe the doctrine too narrowly and overlook an important collateral consequence of their decision. Therefore, I would reverse the district court's order granting summary judgment to Officer Jose Plasencia.

As a threshold matter, the Supreme Court has recognized that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In fact, the Court has "expressly rejected a requirement that previous cases be fundamentally similar." *Id.* (internal quotations omitted); *see United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.") (internal quotations and citation omitted). For this reason, the salient question for us is whether the state of the law on June 3, 2014 gave Officer Plasencia fair warning that his arrest of Ms. Amina Bennett-Martin for violating California Penal Code section 148(a)(1) was unconstitutional. *See Hope*, 536 U.S. at 741. I believe section

148(a)(1) itself, and the law surrounding that statue, were sufficiently clear to place Officer Plasencia on notice. *See* Cal. Pen. Code § 148(a)(1) ("Every person who willfully resists, *delays*, or *obstructs* any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment," is guilty of violating the statute.) (emphasis added).

*People v. Quiroga*, 16 Cal. App. 4th 961 (1993), is the seminal case in the state of California with respect to violations of California Penal Code section 148(a)(1). There, the California Court of Appeals analyzed three separate events to determine whether officers had probable cause to arrest the appellant for violating section 148(a)(1). *Quiroga*, 16 Cal. App. 4th at 966 ("In analyzing the charge of resisting a peace officer, we see distinct constitutional and statutory issues with respect to (1) appellant's conduct in the apartment before his arrest, (2) his refusal to tell his name in the police car and police station while en route to jail, and (3) his refusal to disclose his identity in the booking interview at jail."). My colleagues focus on the first of these three events while conveniently ignoring the second:

> After his arrest, appellant refused to give his name although he was asked repeatedly for personal identification in the car, and then several times between there and the police department and at the police department. [Officer] Stefani testified, "He refused to tell me his name. As I recall, several times I would ask him his name, and he would say Puddin' Tane, ask me again I'll tell you the same."

2

*Id.* at 965. In finding that the officers lacked probable cause to arrest appellant for refusing to identify himself en route to the police station, the court stressed that appellant's conduct "did not delay or obstruct a peace officer in the discharge of any duty within the meaning of the statute." *Id.* at 966. This was because the arrest had already been effected; hence, "appellant's noncooperation did not serve to delay or thwart his lawful detention." *Id.* Furthermore, the court noted that the officers had no compelling reason to need this information until appellant arrived at the jail and was booked. *Id.* at 966-67. The majority takes the position that this analysis in *Quiroga* is irrelevant because Officer Plasencia contends Ms. Bennett-Martin's pre-arrest conduct delayed or obstructed the discharge of his duties. But as will be discussed below, Officer Plasencia's cursory assertion lacks evidentiary support.

*Quiroga* clearly establishes a rule of law that a violation of section 148(a)(1) requires more than mere noncooperation with an officer's orders. *See id.* That noncooperation must serve to "delay" or "obstruct" an officer in the lawful discharge of her duties. *See* Cal. Penal Code § 148(a)(1). The facts in *Quiroga* as compared to this case -- a refusal to identify oneself versus a refusal to hang up a call -- do not make this rule any less applicable or the notice to officers any less palpable. The important question is whether a reasonable

officer in Officer Plasencia's position would have believed that Ms. Bennett-Martin's refusal immediately to hang up her phone call "delayed" or "obstructed" his "vandalism investigation by several minutes." The facts in this case do not support that conclusion.

First, the district court, without thoughtful analysis, concluded that Ms. Bennett-Martin's refusal immediately to hang up her phone delayed Officer Plasencia's vandalism investigation by several minutes. It is unclear, however, what type of investigating, if any, Officer Plasencia was conducting at the time he instructed Ms. Bennett-Martin not to talk on her phone. The only evidence in the record suggests that he was running a records check. There has been no discussion regarding what a records check entails, but considering Officer Plasencia had all the information he needed from Ms. Bennett-Martin to run her records, it is unclear why he needed her to hang up her phone call, or how refusing immediately to do so delayed his vandalism investigation by several minutes.

Second, I am troubled by the notion that Ms. Bennett-Martin's conduct created serious safety concerns for Officer Plasencia. Officer Plasencia's encounter with Ms. Bennett-Martin took place in broad daylight and at a busy, public intersection. Further, the record reflects that the person on the phone

with Ms. Bennett-Martin during this encounter was her mother. The mere fact that she provided her mother with her location in response to feeling like she was being harassed is of no moment. By holding otherwise, my colleagues now send a signal to officers that they can arrest a young person, merely out of caution, for providing a parent or guardian with their location during a police encounter. Moreover, this was not a scenario where Ms. Bennett-Martin, or her mother, threatened to harm Officer Plasencia. Had that been the case, concerns about Officer Plasencia's safety would have been warranted.

Finally, I must emphasize that it was not until after Officer Plasencia's vandalism investigation proved fruitless that Ms. Bennett-Martin was determined to have violated California Penal Code section 148(a)(1). Indeed, at one point after Ms. Bennett-Martin complied with the orders to hang up her phone call, the district court found that Officer Plasencia informed her she was not under arrest, but instead only detained. In my view, this further undercuts any belief that a reasonable officer in Officer Plasencia's position would have thought they had probable cause to arrest Ms. Bennett-Martin for violating section 148(a)(1).

Accordingly, I respectfully dissent from the majority's decision.

5