Filed 8/19/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J. C., a Person Coming Under the Juvenile Court Law. | C075043 |
| THE PEOPLE, | (Super. Ct. No. 135108) |
| Plaintiff and Respondent, | |
| v. | |
| J. C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge. Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Raymond L. Brosterhous II, Deputies Attorney General, for Plaintiff and Respondent.

The minor, J. C., appeals from the order of the juvenile court declaring him a ward of the court.  He contends that one of the two allegations the court sustained is not supported by sufficient evidence and that the other is founded on an unconstitutional statute.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A May 2013 juvenile wardship petition as to 16-year-old J. C. alleged he willfully resisted, delayed, and obstructed Sacramento Police Officer Adam Feuerbach in the performance of his duty (Pen. Code,[1] § 148, subd. (a)(1)) and willfully disturbed a public school (Ed. Code, § 32210).

At the jurisdictional hearing, Officer Feuerbach, assigned to Kennedy High School, testified that around 12:45 p.m. on April 30, 2013, he received a call from the school administration about "an uncontrollable, irate student in the hallways." Responding to the scene, he saw the minor, the school principal, campus monitor Sly, and another campus monitor, along with numerous students.  (It was the lunch hour, and all the students eat then or mill around in the hallways.)  The principal said he had directed the minor to go to his office and the minor was ignoring his orders.  The minor was "visibly irate . . . and . . . cursing."

Officer Feuerbach advised the minor that if he came with Feuerbach to the principal's office, Feuerbach would instruct school personnel and security to stay behind. The minor complied, walking a few feet in front of him.  But all the way to the office, the minor repeated, loudly enough to attract other students' attention, that he was "going to punch that nigga Sly [the aforementioned campus monitor] in the face" and Sly "was going to get it."

---

[1]     Undesignated section references are to the Penal Code.

2

When they got to the principal's office, the vice-principal advised the minor he was suspended. The minor kept on saying that he intended to punch Sly in the face, and he should have attacked Sly before when Sly had called him a bitch. The minor also said he would punch the vice-principal.

While in the office, the minor called his mother; he became more and more irate as he talked, "screaming [and] yelling" and pacing the floor. Officer Feuerbach told the minor he needed to sit down and calm down, but the minor did not listen. The minor slammed or threw the phone down on the table.

About three to five seconds after the minor failed to obey the order to sit down and calm down, Officer Feuerbach decided to detain him "based on my safety and safety of the school and also the [minor]'s." Feuerbach advised the minor he was being detained and ordered him to put his hands on his head with his fingers interlaced. Feuerbach then tried to put a control hold on the minor by grabbing the minor's interlaced hands with one hand and grabbing the minor's elbow from underneath with the other hand. When Feuerbach touched the minor's elbow, the minor turned, pulled away, and started to walk away. Feuerbach performed an arm bar takedown on the minor and detained him on the floor; he then handcuffed him and took him out to his squad car.

The minor's mother testified on his behalf that the vice-principal called her during the lunch hour on April 30, 2013, to tell her the minor would be sent home for the day (not suspended). She heard the minor yelling in the background: "It's a lie." She did not hear him use profanity or threaten anyone. She asked to speak to him. During the two minutes or so that he was on the phone with her, he was starting to calm down. He set the phone down. She heard him say he was going home, and someone ordered him to stay there; he said he did not feel like sitting down. She heard a crash. A few seconds later, she heard him crying and asking, "[W]hy did you do this to me?" The vice-principal asked whether the mother was still on the phone, then the phone hung up. The mother tried to call back but was told the vice-principal was in conference with a student.

3

In rebuttal, Yvonne Esquivel, the vice-principal's secretary, testified that when the minor was brought into the office, he was "extremely agitated . . . pacing back and forth in the office, very upset, using profanity." He was saying he was "going to kick [a hall monitor]'s ass . . . going to F him up." Officer Feuerbach said the minor could be arrested for that; the minor replied: "Well, if I'm going to be arrested, . . . then I'm really going to fuck him up." The vice-principal walked up to him and asked if they could talk; the minor replied: "[G]et away from . . . me nigger." The vice-principal said the minor would be suspended, then went back into his inner office to call the minor's mother. When the vice-principal handed the phone to the minor to talk to her, he was still loud, agitated, and profane. After a short time, the minor threw the phone down on the desk. Officer Feuerbach ordered him to take off his backpack and put his hands up behind his head. The minor did not take off the backpack. Feuerbach quickly took him down.

Defense counsel argued the minor did not resist an officer in the lawful performance of his duties within the meaning of section 148, subdivision (a)(1), because: (1) the officer's original detention of the minor in the vice-principal's office was unlawful; (2) even if it was lawful, the officer did not give the minor enough time to comply with his commands; and (3) the minor did not really resist, but just "turn[ed] around perhaps to say wait[,] what's going on here."

As to the charge of willfully disturbing a public school, defense counsel pointed out that the only published decision discussing Education Code section 32210 (formerly Ed. Code, § 16701) held it unconstitutionally overbroad. (*Castro v. Superior Court* (1970) 9 Cal.App.3d 675, 699-704 (*Castro*) (lead opn. of Kaus, P. J.); see *id.* at pp. 708-710 (conc. opn. of Stephens, J.) [concurring in result but finding statute not overbroad].) Counsel argued that since the statute, though renumbered after *Castro* appeared, was substantively unaltered, the court was obliged to follow *Castro* and dismiss this charge.

After obtaining briefing from the parties on the legal and factual issues, the juvenile court issued a ruling sustaining both charges.

4

As to the resisting charge, the court found that the minor's conduct before his detention was sufficient to justify the detention:  he cursed loudly and threatened the security monitor all the way to the principal's office; continued being loud, profane, and disruptive in the office; and refused Officer Feuerbach's reasonable order to sit down. The officer's use of physical force thereafter was made necessary by the minor's unlawful attempt to end the officer's lawful detention.

As to the disturbing a school charge,  the court found Education Code section 32210 constitutional as to the present facts.

DISCUSSION

I

*Substantial Evidence Of The Resisting Charge*

The minor contends substantial evidence does not support the judgment as to the resisting charge because he did not physically resist Officer Feuerbach before his arrest, but at most failed to comply "with 'alacrity' " to the officer's commands, and was within his rights to tell the officer to leave him alone; furthermore, he merely "momentarily shrugged off [Feuerbach]'s attempt to grab [the minor]'s arm and began to walk away," then offered " 'little resistance' " to the officer's takedown.  We are not persuaded.

Section 148, subdivision (a)(1) provides as relevant:  "Every person who willfully resists, delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

A person violates this statute if he or she willfully resists, delays, or obstructs a peace officer engaged in the performance of his or her duties, and the person knew or reasonably should have known that the other person was a peace officer engaged in the

5

performance of his or her duties.  (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.)

We review claims of insufficient evidence under the substantial evidence standard. We consider the evidence, including the reasonable inferences therefrom, in the light most favorable to the judgment, and affirm if a reasonable trier of fact, so construing the evidence, could have found the charge true beyond a reasonable doubt.  (*People v. Valdez* (2004) 32 Cal.4th 73, 104; *People v. Johnson* (1980) 26 Cal.3d 557, 577-578.)

Viewing the evidence most favorably to the judgment, the minor willfully resisted Officer Feuerbach, knowing him to be a peace officer engaged in the performance of his duties.  The minor did not comply with the officer's order to sit down and calm down, or with his subsequent order to submit peacefully to detention.  In response to the officer's second order, the minor not only did not comply but tried to evade the officer's grasp. Substantial evidence supports the court's ruling .

The minor relies on *People v. Quiroga* (1993) 16 Cal.App.4th 961, but his reliance is misplaced.  In *Quiroga*, before the defendant's arrest, he complied with the officer's orders, although slowly, and his act of questioning whether the officer could lawfully enter a residence without a warrant did not amount to resisting the officer because the defendant had a First Amendment right to ask that question.  (*Id.* at p. 966.)  Here, the minor did not comply with Officer Feuerbach's orders or dispute the lawfulness of the officer's conduct.  So far as the minor claims he did not *physically* resist the officer, *Quiroga* holds that the statute does not "apply only to physical acts."  (*Quiroga*, at p. 968.)  In any event, when the minor pulled away from Officer Feuerbach's attempt to put him in a control hold, that was physical resistance.

II

*The Charge Of Willfully Disturbing A Public School*

Relying on *Castro*, the minor contends the judgment must be reversed because Education Code section 32210, which provides that "[a]ny person who willfully disturbs

6

any public school or any public school meeting is guilty of a misdemeanor," is facially overbroad.  We disagree.

In addressing this point, we first note that decisions issued before and after *Castro* have given statutes worded similarly to Education Code section 32210 a narrow construction to avoid finding them facially overbroad.  Applying a similar narrowing construction to Education Code section 32210, we conclude that the statute as so construed is constitutional and covers the minor's actions.

A

*Applicable Rules Of Construction*

Statutes are presumed constitutional and should be construed to uphold their constitutionality unless the opposite "clearly, positively and unmistakably appears." (*In re Dennis M.* (1969) 70 Cal.2d 444, 453.)

"A statute may not be found constitutionally invalid on overbreadth grounds simply because it is possible to conceive of one or a few impermissible applications; such invalidity occurs only if the provision inhibits a substantial amount of protected speech." (*People v. Toledo* (2001) 26 Cal.4th 221, 234-235.)

"Where the statute in question is narrowly drawn to protect a legitimate state interest, and proscribes conduct and not purely speech, the overbreadth of the statute 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'  (*Broadrick* [*v. Oklahoma* (1973)] 413 U.S. [601,] 615 [37 L.Ed.2d [830,] 842].)"  (*People v. Hernandez* (1991) 231 Cal.App.3d 1376, 1381.)

"In order to successfully challenge a statute as overbroad, a party 'must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally.'  (*New York State Club Assn. v. City of New York City* (1988) 487 U.S. 1, 14 [101 L.Ed.2d 1, 17, 108 S.Ct. 2225].)  '[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'  (*City*

7

*Council v. Taxpayers for Vincent* (1984) 466 U.S. 789, 800 [80 L.Ed.2d 772, 783, S.Ct. 2118].)" (*People v. Hernandez*, *supra*, 231 Cal.App.3d at pp. 1382, 1379 [§ 653m, subds. (a) & (b), barring use of telephone "with intent to annoy" others, not overbroad because narrowly drawn to protect legitimate state interest and aimed at conduct which is not purely speech].)

B

*Castro*

In *Castro*, the petitioners, Mexican-American high school students indicted for organizing or inciting a mass walkout at four schools to protest conditions there, sought a writ of prohibition to bar their prosecution for conspiring to violate former Education Code section 16701, which is substantively identical to current Education Code section 32210.  Petitioners asserted, among other contentions, that the statute was overbroad. (*Castro*, *supra*, 9 Cal.App.3d at pp. 678, 680.)

Presiding Justice Kaus's lead opinion defined the overbreadth test as "whether the statutory language, as narrowed by any judicial decision, encompasses conduct which is protected by the First Amendment." (*Castro*, *supra*, 9 Cal.App.3d at p. 700.)  Finding no narrowing judicial decision (*id.* at p. 701), and concluding that the expression "willfully disturb[ing] a public school" could encompass a great range of conduct protected by the First Amendment (*id.* at pp. 701-704), the majority held the statute overbroad.  (*Id.* at p. 704; see *id.* at p. 711-712 (conc. & dis. opn. of Reppy, J.).)  (They did not use the term "facially overbroad," but that is clearly what they meant.)  Therefore, in their view, the petitioners were entitled to injunctive relief.  (*Id.* at p. 708.)

Justice Stephens agreed that an injunction should issue, but rejected the majority's overbreadth analysis.  (*Castro*, *supra*, 9 Cal.App.3d at pp. 708-711 (conc. opn. of Stephens, J.).)  He relied on a recent California Supreme Court decision that narrowly construed section 403 (imposing criminal penalties on " 'every person . . . who willfully disturbs or breaks up any assembly or meeting . . .' ") to avoid finding it

8

unconstitutionally overbroad.  (*In re Kay* (1970) 1 Cal.3d 930, 941-943.)[2]  As Justice

Stephens noted,  "After expressly recognizing a presumption that the legislative intent

was to enact a valid statute . . . , the court in *Kay* stated that section 403 'authorizes the

imposition of criminal sanctions only when the defendant's activity itself--and *not* the

content of the activity's expression--substantially impairs the effective conduct of a

meeting.'  [(*In re Kay*, *supra*, 1 Cal.3d at p. 942.)]  [T]he court clearly inferred that *under*

*appropriate facts and limiting instructions*, section 403 could be constitutionally

applied." (*Castro*, *supra*, 9 Cal.App.3d at p. 710 (conc. opn. of Stephens, J.).)[3]

### C

### *Braxton v. Municipal Court*

In *Braxton v. Municipal Court* (1973) 10 Cal.3d 138 *(Braxton)*,  decided

subsequent to *Castro,* our Supreme Court addressed section 626.4, which provided in

part:  "The chief administrative officer of a campus or other facility of a community

---

**2**      *Kay* overturned the convictions of habeas corpus petitioners who heckled a
speaker at a public political meeting.  (*In re Kay*, *supra*, 1 Cal.3d at pp. 934-936.)  The
court held that such conduct did not fall within section 403 unless "the defendant
substantially impaired the conduct of the meeting by intentionally committing acts in
violation of implicit customs or usages or of explicit rules for governance of the meeting,
of which he knew, or as a reasonable man should have known." (*Kay*, at p. 943.)  The
court relied in part on *Tinker v. Des Moines Community School Dist.* (1969) 393 U.S. 503
[21 L.Ed.2d 731], where the United States Supreme Court held that the wearing of
armbands by students in school to protest the Vietnam War was constitutionally protected
conduct even though it might cause school officials to fear a disturbance on campus.
(*Tinker*, at pp. 505-514 [21 L.Ed.2d at pp. 737-742].)

**3**      The lead opinion in *Castro* did not discuss *Kay*; instead, it cited Justice Reppy's
concurring opinion on this point.  (*Castro*, *supra*, 9 Cal.App.3d at p. 701, fn. 27 (lead
opn. of Kaus, P. J.).)  Justice Reppy apparently viewed *Kay* as inapposite because it did
not consider "whether the conduct of a defendant could be judged by the initially refined
meaning of a statute which, but for such then declared refinement, would be overbroad,
. . . holding, in effect, that a defendant is entitled to advance notice of a 'saving'
construction of a prima facie overbroad statute." (*Castro*, at p. 712 (conc. & dis. opn. of
Reppy, J.).)

9

college, state college, or state university, or an officer or employee designated by him to maintain order on such campus or facility, may notify a person that consent to remain on the campus or other facility under the control of the chief administrative officer has been withdrawn whenever there is reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility." (*Braxton*, at p. 142, fn. 1.) Like *Kay* with respect to section 403, *Braxton* construed section 626.4 narrowly to avoid finding it an overbroad prohibition of constitutionally protected speech or conduct.

Therefore, "[t]o confine the statute within constitutional limits and to avoid the penalization of free speech, we interpret the words 'willfully disrupted' to apply in a limited situation consistent with the legislative purpose. In authorizing temporary banishment, the Legislature, we believe, sought to draw a line between (1) physically disruptive conduct, otherwise proscribed by statute, which in an emergency situation 'constitute[s] a substantial and material threat to the orderly operation of the campus' (§ 626.4, subd. (c)), and (2) the lawful exercise of free speech and other First Amendment

*Braxton* noted that "the statute, if literally applied, would succumb to constitutional attack both because of First Amendment overbreadth and vagueness": the expression " 'willfully disrupted the orderly operation of [the] campus' " would "include many forms of constitutionally protected expression and risk a chilling of free speech." (*Braxton*, *supra*, 10 Cal.3d at p. 144.) However, "a narrower interpretation will both effectuate the legislative purpose of the statute and confine it within constitutional parameters." (*Ibid.*)

The court explained that "the purpose of the legislation is to provide a swift remedy, by means of exclusion from the campus, of those students [fn. omitted] who commit overt acts of violence or otherwise engage in illegal conduct which disrupts 'the orderly operation of such campus.' This remedy affords an alternative, supplementary, and often less onerous procedure than criminal prosecution." (*Braxton*, *supra*, 10 Cal.3d at p. 144.)

10

liberties. We think the Legislature distinguished, in substance, between lawful peaceful persuasion and unlawful physical coercion." (*Braxton*, *supra*, 10 Cal.3d at p. 144.) In short, "[i]n order to avoid the constitutional overbreadth that a literal construction of [the statute] would entail, we interpret the statute to prohibit only incitement to violence or conduct physically incompatible with the peaceful functioning of the campus." (*Id.* at p. 150.)

This narrowing construction was impelled by the rule -- previously applied in *In re Kay*, *supra*, 1 Cal.3d at page 930 -- that courts must construe statutes so as to uphold their constitutionality if the statutory terms may fairly and reasonably be so interpreted. (*Braxton, supra,* 10 Cal.3d at pp. 145-146.) This approach to statutory construction also relied on *Tinker v. Des Moines Community School Dist.*, *supra*, 393 U.S. at page 514 [21 L.Ed.2d at page 742], which had held that the exercise of free speech at a school campus must be allowed, even though potentially disturbing or disruptive, unless it creates a " 'substantial and material threat' " to the orderly operation of the campus. (*Braxton*, at p. 150.)

In holding that a statute was facially overbroad without first attempting to find a narrowing construction to effectuate the statute's legitimate purpose -- the analysis employed by our Supreme Court in *Kay*, as to a similarly worded statute before *Castro* appeared --the *Castro* lead opinion stands alone among the decisions we have discussed. The minor cites no later decisions applying the lead opinion's method of overbreadth analysis, and we have found none. It is more to the point that subsequent decisions have ignored the *Castro* lead opinion's rationale on the subject of overbreadth. *Braxton*, which construes a criminal statute worded similarly to Education Code section 32210 and enacted for a similar purpose, provides the more compelling overbreadth analysis.

As the minor admits, the Legislature has a compelling interest in maintaining discipline at public schools, as it does in maintaining the orderly operation of public college and university campuses. (*In re Randy G.* (2001) 26 Cal.4th 556, 562-563;

11

*Braxton*, *supra*, 10 Cal.3d at pp. 144, 150.)  In order to effectuate this legislative purpose as to Education Code section 32210, we think its expression "willfully disturbs," which is more or less synonymous with "willfully disrupt[s]" in the statute construed in *Braxton*, should be construed as the *Braxton* court construed that statutory language.  In other words, to "willfully disturb[] any public school" means to act violently or in a manner that incites to violence, or to engage in "conduct physically incompatible with the peaceful functioning of the campus."  (*Braxton*, *supra*, 10 Cal.3d. at p. 150.)  So construing Education Code section 32210, it does not impinge on any conduct protected by the First Amendment.  Therefore, the statute is not facially overbroad.

The minor's conduct here did not raise any First Amendment issues.  The minor does not cite any authority holding that threatening school officials or resisting a peace officer's lawful orders is protected by the First Amendment, and we know of none.  On these facts, Education Code section 32210 may be constitutionally applied to the minor's conduct.  The juvenile court correctly found that the minor violated the statute.

DISPOSITION

The judgment is affirmed.


ROBIE          , J.



We concur:



RAYE          , P. J.



HOCH          , J.


12