Filed 3/15/22  P. v. Moua CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHIAN MOUA,<br><br>    Defendant and Appellant. | F080320<br><br>(Super. Ct. No. F18906296)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Heather Mardel Jones, Judge.

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

Defendant Chian Moua pled no contest to possession of methamphetamine while in possession of a firearm. He contends on appeal that the warrantless search of his vehicle that led to the discovery of the firearm, methamphetamine, and marijuana was unlawful because the search was unsupported by probable cause and no exception to the warrant requirement applied. Specifically, he argues that the small amount of marijuana he possessed in the vehicle did not justify the search of the vehicle and the body camera video shows that he did not resist, delay, or obstruct the arresting officer. The People disagree, arguing that defendant was not detained until the officer had probable cause to arrest and the search was supported by probable cause and exceptions to the warrant requirement.

We ordered the parties to submit supplemental briefing on the question of whether any remaining balance on the probation report and probation supervision fees imposed pursuant to former Penal Code section 1203.1b[1] should be vacated because they are uncollectable and unenforceable pursuant to Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869). Defendant agrees that the remaining balance of the fees should be vacated, and the People have submitted no response. We vacate the portion of the judgment imposing probation report and probation supervision fees. As modified, we affirm.

## PROCEDURAL SUMMARY

On March 19, 2019, the Fresno County District Attorney filed an information charging defendant with possession of methamphetamine while in possession of a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), carrying a loaded firearm in public (§ 25850, subd. (a); count 2), concealing a firearm in a vehicle (§ 25400, subd. (a)(1); count 3), misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 4), misdemeanor possession of marijuana for sale

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

2.

(Health & Saf. Code, § 11359, subd. (b); count 5), and misdemeanor possession of a smoking device (Health & Saf. Code, § 11364; count 6).

On February 28, 2019, defendant filed a motion to suppress evidence pursuant to section 1538.5. On March 13, 2019, the magistrate judge denied that motion based on evidence presented on the same date at the preliminary hearing.

On August 6, 2019, defendant file a motion to set aside the information pursuant to section 995, renewing the arguments presented in support of the motion to suppress evidence. On August 23, 2019, the trial court denied defendant's motion.

On October 17, 2019, pursuant to a negotiated plea, defendant pled no contest to count 1. In exchange for his plea, the remaining counts were dismissed, the prosecutor agreed not to seek a sentence beyond two years imprisonment, and the court indicated a sentence including no initial state prison and no more than one year in jail.

On November 15, 2019, the trial court suspended imposition of judgment and granted defendant probation for two years with the condition that he serve 180 days in jail. The trial court also imposed various fees and fines, including "an annual probation supervision fee of $360 [and] a one-time sentence report fee of $296 …."

On November 15, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY[2]

### Suppression Hearing Testimony

On September 14, 2018, Clovis Police Officer Timothy Dronek was working a patrol shift when he received word that three callers reported a man in a red shirt and a woman walking through alleys and looking into cars. In an apartment complex parking lot in the area Dronek had been searching, he found defendant and a woman seated in a

---

[2] The factual summary is based on the testimony presented at the March 12, 2019 joint preliminary hearing and the hearing on defendant's motion to suppress.

silver sedan (the vehicle). Defendant was wearing a red shirt. Dronek did not see defendant driving the vehicle.

Dronek decided to make contact with defendant and the woman. As Dronek approached the vehicle, the woman exited the vehicle and Dronek lost sight of her. He approached the passenger door of the vehicle and contacted defendant, who sat in the driver seat. The front passenger window was rolled down approximately two inches and Dronek "smelled the odor of marijuana." Dronek asked defendant if he lived in the apartment complex and defendant responded that he did not. He was there to drop off the woman who had exited the vehicle. Dronek "noticed [defendant] was sweating on the forehead profusely. [Dronek believed defendant] was nervous." Dronek asked for defendant's registration and insurance information and defendant responded he did not have either. Dronek testified that defendant leaned over the center console, "moving his arms around, but keeping his right arm over the center console[,]" while the two spoke. He believed defendant might be concealing something in the center console of the vehicle. He asked defendant to place his hands on the steering wheel. Dronek also testified that at some point during the initial contact he made the statement " 'I smell some marijuana in there,' and … asked [defendant] about why [he] was smelling marijuana."[3]

Dronek moved to the driver side of the vehicle and saw that defendant had removed his hands from the steering wheel. Dronek asked defendant why his hands were off of the steering wheel. Defendant responded, " 'Sorry,' " then started moving his right hand toward his right side, where the seatbelt was already disconnected.[4] Dronek believed that defendant was reaching for some item, so he decided to remove defendant

---

[3] Body camera footage was admitted. The body camera footage does not contain that question or a similar question.

[4] The body camera footage does not depict defendant reach his right hand toward his seatbelt or lap at that point in the encounter.

from the vehicle. He told defendant to exit the vehicle. When defendant continued to reach to the right, Dronek forcibly removed him from the vehicle, handcuffed him, and placed him in Dronek's patrol car.

Dronek returned to the vehicle and saw "leaves of marijuana" and "small buds of marijuana on the floorboard, specifically the passenger and driver's floorboard, and [he] could still smell the odor of marijuana, unburnt, specifically." Dronek did not see any marijuana before he opened the door to remove defendant from the vehicle. When he returned to the vehicle, Dronek did not move anything to be able to see the marijuana on the floorboards. Dronek then searched the vehicle and discovered a Smith & Wesson .357-caliber revolver in the center console, containing one round of ammunition. He also found a bag containing methamphetamine and a pipe for smoking methamphetamine in a small pull-out drawer near the steering wheel. In a compartment on the front driver's side door, he found an operable scale and a pair of handcuffs. Also in the vehicle, Dronek found a cellular phone and defendant's paystubs from his job at a pizzeria.

Dronek later obtained defendant's approval to search his cellular phone. In searching defendant's phone, he discovered "text messages regarding drug sale activity," such as: " 'How much for 10? How much for an ounce once you get some more supplies?' " Defendant also later told Dronek that the revolver belonged to the woman who was in the car with him, but he knew that it was in the car. Defendant also said that he had purchased the methamphetamine from her and had just dropped her off at the apartment complex where he was arrested.

### Body Camera Footage

The trial court admitted a roughly 10-minute video from Dronek's body camera, depicting the exchange between he and defendant. We have reviewed the video and summarize the relevant portions below.

The video depicts Dronek exiting his patrol vehicle, parked perpendicular to defendant's vehicle, approximately four parking stalls from defendant's vehicle. He

approached defendant's vehicle from the passenger side and, as he reached defendant's front passenger window, he announced himself through a roughly two-inch opening in defendant's passenger window: "Hello. Hi, Officer Dronek, Clovis PD." Dronek shone his flashlight through defendant's window and asked if defendant had "just let his girl off." Defendant leaned over the center console to speak to Dronek and explained that he just dropped off a woman to her friend's apartment. He gestured with his right hand while speaking to Dronek and to indicate the direction in which the woman had gone. Dronek asked defendant several times where "the girl" had gone. Defendant responded that he did not know which specific apartment she was going to.

Dronek asked for defendant's identification card. Defendant asked if he had done something wrong and Dronek repeated his request for defendant's identification card. Defendant handed his identification card through the gap in the window. Dronek asked defendant if he was on probation. Defendant gave no audible response. Dronek then asked for defendant's registration and insurance information. Defendant opened his glovebox, leaning over the center console to do so. He asked Dronek to direct his flashlight at the documents he removed from the glovebox and Dronek did so. Defendant did not provide registration or insurance information, but he said that it should be current and invited Dronek to check it. Dronek then continued to ask about the location of the woman who had been in the vehicle with him and why he had driven her to the apartment complex. During this portion of the interaction, defendant had his left hand on the steering wheel and held paperwork in and gestured with his right hand.

Dronek covered the camera while making a call over the radio. When the camera again faced defendant, he appeared to be leaning forward and no longer had the paperwork that he had previously held in his right hand. Both of his hands had moved. Dronek told defendant to place his hands on the wheel, keep them there, and to not move. Defendant apologized and indicated his assent. Dronek then walked around to the driver's side of the vehicle. As he approached the front driver's side door, defendant

6.

moved his left hand out of the vehicle and onto the roof of the vehicle. Dronek told defendant that he had taken his hands off of the wheel. Defendant apologized again and placed his hands back on the wheel. Dronek opened the front driver door of the vehicle and told him not to reach for anything. Dronek then told defendant to place his hands on the roof of the vehicle and exit. Defendant said, "What the heck?" and placed his hands back on the steering wheel. Dronek stepped back and defendant began rapidly apologizing and exiting the vehicle. As defendant was exiting the vehicle, Dronek grabbed defendant, moved him against the side of the vehicle, and handcuffed him behind his back.

Dronek conducted a patdown search of defendant's person then placed defendant in the back of his patrol car. Defendant asked Dronek to close the door to his vehicle and refused Dronek's request to be permitted to search the vehicle for insurance or registration. Dronek then searched defendant's vehicle. No marijuana is visible from the body camera footage.

### Magistrate Judge's Ruling on Motion to Suppress

The magistrate judge denied defendant's motion to suppress the evidence obtained from the search of defendant's vehicle. Its reasoning was as follows:

> "A call comes in that there is a male in a red shirt, accompanied by a female, looking into vehicles and checking door handles was the testimony in a specific specifically-defined—I think the testimony was a half-mile area. Within that area, the officer finds the defendant in a red shirt, with a female, who he described as a female with long hair, in a vehicle within that area. He stops his patrol car, does not block the defendant's vehicle. That vehicle is parked. As he is walking to the vehicle the defendant is sitting in, he hears, but cannot see a door shut and footsteps move away, and as he comes into view of the vehicle the defendant is sitting in, the female, who was there moments earlier, is no longer there, and the defendant is leaned over and is manually from inside the car shutting the passenger door, which was viewable on that video of the body cam. He then testifies he hears—he is alone, doesn't know where the female went. He is asking the defendant questions through the cracked passenger's side and smells the odor of marijuana. He notes the defendant used the term

7.

" 'hugging.' " I agree, it's leaning over the center console area. At some point the officer during this discussion, as evidenced by the body cam, is concerned about the defendant's hands movements and orders him to place his hands on the steering wheel, and then he states on the body cam, " 'Don't move. I'm going to come around to you.' " He takes those five steps around the back of the defendant's vehicle, and in that time frame [defendant] has moved his hands, taken his hands off the wheel and is moving inside the car. The officer at that time opens the car door, pulls the defendant out and detains him. So leading up to the detention, that detention is supported and reasonable and justified based on those facts and circumstances, so that's the first step in the court's analysis.

"The second step is then the vehicle search. So the officer's testimony was he had the odor of marijuana, fresh, marijuana. Those other factors the court's listed, he pulls the defendant out and handcuffs him. The door is open. Moves him to the side, pat searches him, and he testifies that he sees marijuana. He described it as bud, small bud, but bud and shake on the floor. At that point he has probable cause to search the vehicle. It doesn't matter that he then moved the defendant back to his patrol vehicle to secure him and comes back to conduct that search. That search was lawful. … [T]here was cannabis on the floorboards, so that was enough reasonable suspicion of probable cause that there may be a crime of having been committed within the vehicle to justify the search of the vehicle[.]"

## DISCUSSION

### A. The Fourth Amendment Challenge

Defendant argues that the evidence obtained from the search of the vehicle should have been suppressed (and defendant therefore should not have been held to answer) because Dronek's removal of defendant from the vehicle was an arrest without probable cause. He argues that because possession of less than an ounce of marijuana is no longer a criminal offense, it cannot have provided a basis for arrest or search of the vehicle. Nor, he argues, did he resist or obstruct Dronek. Therefore, he argues the search was not a proper search incident to arrest nor was it supported by probable cause. The People argue that Dronek's removal of defendant from the vehicle was a detention based upon reasonable suspicion that defendant had been attempting to break into vehicles and possessed an open container of marijuana in his vehicle, not an arrest without probable

8.

cause. Alternatively, the People argue that Dronek was justified in removing defendant from the vehicle and detaining him for officer safety. They further assert that the search of defendant's vehicle during his detention was a lawful search based upon probable cause to believe that defendant had an open container of marijuana in his vehicle because of the odor of marijuana emanating from the vehicle and Dronek's observation of marijuana in plain view on the floorboards of the vehicle.

### 1. Standard of Review and General Legal Principles

Section 995 authorizes a court to set aside an information if (1) the defendant was not "legally committed by a magistrate" or (2) the defendant was committed "without reasonable or probable cause." (§ 995, subd. (a)(2)(A) & (B).) "Probable cause exists if a person ' " ' "of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion" ' " ' that the defendant committed the crime." (*Galindo v. Superior Court* (2010) 50 Cal.4th 1, 8.) An information is not appropriately set aside " 'if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 654.) "This is an 'exceedingly low' standard …." (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 245.)

"Where, as here, the defendant challenges the suppression ruling by a motion to dismiss under Penal Code section 995, we review the determination of the magistrate who ruled on the motion to suppress, not the findings of the trial court." (*People v. Fews* (2018) 27 Cal.App.5th 553, 559.) " '[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate ….' " (*People v. Gonzales* (2017) 2 Cal.5th

9.

1138, 1141.) We do not substitute our own judgment for that of the committing magistrate concerning the weight of the evidence or the credibility of the witnesses. (*People v. Block* (1971) 6 Cal.3d 239, 245.) However, " 'where the facts are undisputed, the determination of probable cause "constitute[s] a legal conclusion which is subject to independent review on appeal." ' " (*People v. Black* (2017) 8 Cal.App.5th 889, 898.) " 'Insofar as the … section 995 motion rests on issues of statutory interpretation, our review is de novo.' " (*Gonzalez*, *supra*, 2 Cal.5th at p. 1141.)

We will uphold the magistrate's ruling if it "is correct on any theory of the law applicable to the case, even if the ruling was made for an incorrect reason." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)

The federal and California Constitutions prohibit unreasonable searches and seizures. (U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13.) California law applies federal constitutional standards to the review of search and seizure rulings. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156, fn. 8.) Under section 1538.5, a trial court may grant a motion to suppress evidence "only if exclusion is mandated by the federal Constitution." (*People v. Banks* (1993) 6 Cal.4th 926, 934.) The initial burden is on the defendant to establish that the government conducted a search without a warrant. The burden then shifts to the prosecution to justify the warrantless search. (*People v. Williams* (1999) 20 Cal.4th 119, 127.) A warrantless search is presumptively unreasonable. (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 652–653.) The prosecution must prove by a preponderance of the evidence the search falls within an exception to the Fourth Amendment's warrant requirement. (*People v. Torres* (1992) 6 Cal.App.4th 1324, 1334–1335.)

2. Analysis

Not all contacts between civilians and law enforcement constitute searches and seizures. Generally, police contact with individuals in public places will fall into one of three categories: (1) a consensual encounter, (2) a detention, and (3) an arrest. (*People v.*

*Bailey* (1985) 176 Cal.App.3d 402, 405.) Detentions are "seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784; see *Berkemer v. McCarty* (1984) 468 U.S. 420, 439–440 [" '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' "].) Arrests, on the other hand, require probable cause. (*People v. Celis* (2004) 33 Cal.4th 667, 673.) " 'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. [Citation.] The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity.' " (*People v. Huggins* (2006) 38 Cal.4th 175, 241.)

If a detention itself is unlawful, its fruits—that is, evidence subsequently obtained from searches, as well as any statements made by the defendant in connection with those searches—must be suppressed. (*United States v. Crews* (1980) 445 U.S. 463, 470.)

The parties agree that the encounter between defendant and Dronek was a consent encounter until Dronek ordered defendant to exit the vehicle. At that point, defendant argues the encounter became an arrest, whereas the People contend that it became a detention. As we will explain, Dronek had reasonable suspicion to detain defendant regarding the potential vehicle break-in investigation and probable cause to arrest defendant for resisting a peace officer when he removed defendant from the vehicle; Dronek's observation of loose marijuana bud and leaves created probable cause to search the vehicle for additional evidence of open containers of marijuana in the vehicle.

" '[T]here is no hard and fast line to distinguish … investigative detentions from … de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to

11.

dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.' [Citations.] Important to this assessment, however, are the 'duration, scope and purpose' of the stop." (*People v. Celis*, *supra*, 33 Cal.4th at pp. 674–675.) A detention that is unreasonably prolonged amounts to a de facto arrest that must be supported by probable cause to be constitutionally valid. (*Dunaway v. New York* (1979) 442 U.S. 200, 212.)

The People argue that Dronek's initial detention of defendant was supported by a reasonable suspicion to believe that defendant was involved in one or more attempts to break into vehicles. We agree, based on his appearance matching the descriptions by the 911 callers (a man in a red shirt and a woman), the fact that he was apparently nervous and sweating profusely, and his proximity to the reported locations of the 911 calls (within a half-mile).

First, under appropriate circumstances, a citizen's tip to 911 can "demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory' " detention. (*Navarette v. California* (2014) 572 U.S. 393, 397.) Multiple tipsters reporting the same or a similar incident tends to support the reliability of the tips and mitigates the specter of "an unknown, unaccountable informant [¶] … [¶] seeking to harass another [by] set[ting] in motion an intrusive, embarrassing police search" by relaying false information. (*Florida v. J.L.* (2000) 529 U.S. 266, 271–272.) Here, multiple callers reported the attempted vehicle break-ins by a man in a red shirt and a woman. Defendant was wearing a red shirt and was seen in the vehicle with a woman. Further, defendant was located in the geographic area from which the 911 calls had originated. (*People v. Little* (2012) 206 Cal.App.4th 1364, 1372 [detention lawful where there was "temporal and geographic proximity" and the defendant matched the description of the suspects' clothing, race, age, and vehicle]; *People v. Sawkow* (1984) 150 Cal.App.3d 999, 1008–1010 [suspect's physical resemblance to the informant's description and the suspect's presence near the crime scene provided reasonable

12.

suspicion to detain]. Further, defendant appeared to be sweating and nervous. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124.) On that record, an officer would have had a reasonable suspicion to believe that defendant may have been involved in attempted vehicle break-ins.

As Dronek continued to investigate the suspected break-ins, defendant moved his hands on the interior of the vehicle, failed to comply with Dronek's orders to keep his hands on the steering wheel, and failed to comply with Dronek's order to step out of the vehicle. The People argue that defendant was subject to arrest for obstructing a peace officer because he removed his hands from the steering wheel after being ordered not to do so. Defendant disagrees, disputing the facts of the initial interaction between Dronek and defendant that led to the detention. Again, we agree with the People.

As a preliminary matter, we note that Dronek's description of his removal of defendant from the vehicle was not entirely consistent with the body camera video.[5] Dronek described that at some point before removing defendant from the vehicle, he said to defendant, " 'I smell some marijuana in there,' and … asked [defendant] about why [he] was smelling marijuana." The body camera video captured the conversation between defendant and Dronek—with the exception of some of defendant's answers to Dronek's questions. Dronek did not ask defendant why he could smell the odor of marijuana. Similarly, the magistrate judge also apparently disagreed with Dronek's characterization of defendant " 'hugging' " the center console, instead simply noting that defendant leaned over the center console in order to have a conversation with Dronek who stood above the front passenger window.

---

[5] Defendant also argues that we should consider Dronek's police report. However, because that report was not before the magistrate judge at the suppression hearing, it is not properly before us now.

13.

Nevertheless, the magistrate judge accepted Dronek's testimony that he smelled a strong odor of marijuana emanating from the vehicle. It further noted that Dronek became concerned about defendant's hand movements and repeatedly ordered him to place his hands on the steering wheel. In fact, Dronek told defendant "to place his hands on the steering wheel, and … 'Don't move.' " Dronek then walked around the rear of the vehicle to the driver's side to find that defendant had removed his hands from the steering wheel, and as the magistrate judge found, was "moving inside the car." Dronek then removed defendant from the vehicle. The trial court's findings that Dronek detected the odor of marijuana emanating from the vehicle and that defendant failed to comply with Dronek's commands to keep his hands on the steering wheel were supported by substantial evidence.

In summary, at the time Dronek removed defendant from the vehicle, he knew that defendant matched the description of a person who had been attempting to break into vehicles in the area, he had detected the odor of unburnt marijuana from inside the car, he had heard defendant's admission that he had driven to the area to drop someone off, and he saw that defendant had removed his hands from the steering wheel and had moved around inside the vehicle, and had initially failed to exit the vehicle when directed to do so, instead responding, "What the heck?" and placing his hands back on the steering wheel.

Section 148 makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician … in the discharge or attempt to discharge any duty of his or her office or employment." The resistance offered by the defendant need not be forceful, violent, or involve physical acts. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1330; *People v. Williams* (2018) 26 Cal.App.5th 71, 92.) However, section 148, subdivision (a) "does not criminalize mere delay in responding to an officer's orders [citations] or a mere refusal to cooperate." (*People v. Francis A.* (2019) 40 Cal.App.5th 399, 408; see *People v. Quiroga* (1993) 16

14.

Cal.App.4th 961, 966 [statute does not criminalize "a person's failure to respond with alacrity to police orders"].) Dronek was investigating a suspected crime. During his investigation, Dronek perceived a potential officer safety threat because of the movement of defendant's hands inside the vehicle and ordered defendant to place his hands on the steering wheel multiple times. Based on defendant's failure to place his hands on the steering wheel and keep them there, and defendant's apparent refusal to exit the car when ordered to do so, Dronek had probable cause to arrest defendant for obstructing a peace officer. (See *In re J.C.* (2014) 228 Cal.App.4th 1394, 1399–1400 [substantial evidence supported a section 148 adjudication where a minor pulled away from an officer after disobeying an officer's order to "sit down and calm down"].)

After Dronek removed defendant from the vehicle, he observed marijuana on the front floorboards and searched the vehicle. Proposition 64 legalized the possession of up to 28.5 grams of marijuana by individuals 21 years or older. (Health & Saf. Code, § 11362.1, subd. (a)(1).) However, Proposition 64 did not decriminalize possession of loose marijuana not in a container or an open container of marijuana in a vehicle during operation of the vehicle. (Veh. Code, § 23222, subd. (b)(1); Health & Saf. Code, § 11362.3, subd. (a)(4).) When an officer legally discovers loose marijuana inside a vehicle, it is appropriately searched for other loose marijuana or open containers of marijuana. (See *People v. Souza* (1993) 15 Cal.App.4th 1646, 1653 ["an open container within plain view provides probable cause to believe that other open containers may be found in the vehicle"].) Dronek's search was therefore supported by probable cause. We find no error.

### B. Assembly Bill 1869

Operative July 1, 2021, Assembly Bill 1869 eliminated many fines, fees, and assessments that courts have imposed under a variety of statutes, including former section 1203.1b, previously allowing collection of probation report and probation supervision fees. (Stats. 2020, ch. 92, §§ 2, 11, 47, 62.) Here, we indicated to the parties

15.

that we were inclined to find the balance of any probation report and probation supervision fees ordered pursuant to former section 1203.1b uncollectable and unenforceable as of July 1, 2021. (§ 1465.9, subd. (a).) Defendant filed a brief agreeing that those fees have been stricken and the People have filed no responsive brief. We therefore vacate the portion of the judgment requiring payment of fees pursuant to former section 1203.1b. Any portion of those fees not collected before July 1, 2021, is unenforceable and uncollectable.

## DISPOSITION

The portion of the judgment imposing fees pursuant to former section 1203.1b is vacated. As modified, we affirm.